## EVE TROVINGER *against* M'BURNEY.

ASSUMPSIT, for meat, drink, &c., found and provided, and work and labor, in and about the nursing &c., of Catharine Trovinger, the plaintiff's daughter, and James M'Burney, and Susan M'Burney, infant children of Catharine, at the defendant's request, and on his promise to pay, &c. tried at the Steuben circuit, October 1st, 1823, before NELSON, C. Judge; when a verdict was found for the plaintiff.

The facts are sufficiently stated in the opinion of the Court.

ALBANY,
Oct. 1825.

Trovinger
v.
M'Burney

A promise by the putative father, to pay for the board of a woman, and her bastard child; the purpose of both parties, express or tacit, being to facilitate a continued state of cohabitation between the pro-

mrsor and the woman, is void.

But the purpose must be clearly proved; and is not to be inferred from a previous cohabitation between them, with the knowledge of the promisee. This fact is not sufficient ground for the jury to infer consent to a subsequent cohabitation, in a case where the woman is the daughter of the promisee. It makes nothing towards such an inference and should not be submitted to the jury.

ALBANY,
Oct. 1825.

Trovinger
v.
M'Burney.

The main defence on the trial was, that the services, board, &c. of the plaintiff, were performed and bestowed with the view of encouraging and facilitating the continuance of the defendant, in a state of prostitution with the plaintiff's daughter, Catharine; and therefore formed no legal consideration for the defendant's promise; but the judge, who tried the cause, did not deem the testimony upon this point even strong enough to be submitted to the jury.

Another question was whether the parties had fully accounted together concerning the subject matter of this suit and a promissory note been executed by the plaintiff for the balance : or, whether her giving the note was not presumptive evidence that her demand was paid.

*J. C. Spencer*, for the defendant, now moved for a new trial, and cited *Girardy* v. *Richardson*, (1 Esp. Rep. 13;) 1 Selw. N. P. 79; *Gray* v. *Mathias*, (5 Ves. 286;) *Holman* v. *Johnson, per Ld. Mansfield*, (Cowp. 343;) 1 Phil. Ev. 113; *Decker* v. *Livingston*, 15 John. Rep. 479;) *Van Veilden* v. *Welles*, 6 id. 85.)

*J. Platt* and *E. Allen*, contra, cited *Turner* v. *Vaughan*, (2 Wils. 339;) *Bowry* v. *Bennet*, (1 Campb. Rep. 348;) *Lloyd* v. *Johnson*, (1 B. & P. 340;) Exodus, ch. 22, v. 16

*Curia*, per WOODWORTH, J. The first question to be decided is, whether the consideration for the defendant's promise was illegal and void.

The plaintiff's daughter became the mother of an illegitimate child. The defendant was the reputed father; and promised to pay the plaintiff for their board. About two years after, another child was born; of which the defendant was also the father. Shortly afterwards, he made a similar promise. The plaintiff knew that the defendant, before the birth of the first, and until after the birth of the second child frequently visited her daughter at the plaintiff's house; and during all that time, frequently cohabited with her.

From this statement, it is obvious that the daughter was placed in a situation requiring support; and it was the duty

of the defendant to provide for her.  If, however; the party
contracting to board, either expressly or tacitly assented,
that, during that period, the illicit intercourse might be con-
tinued; or, if it appeared that the contract was made for the
purpose of facilitating a continued prostitution, it would
thereby become tainted, and deprive the plaintiff of her ac-
tion.

In order to decide this question correctly, it is necessary
briefly to consider the circumstances under which each pro-
mise was made.

After the birth of the first child, the defendant stipulated
to pay for boarding.  This, *per se,* was a lawful and com-
mendable act; and formed a valid contract.  But it is ob-
jected, that the plaintiff knew, during the time, that the de-
fendant visited the daughter; and, previous to the birth, co-
habited with her.  This objection, it is true, greatly impli-
cates the character of the plaintiff; and justly subjects her
to the imputation of an immoral woman, regardless of the
reputation of her child: for it is not alleged that she took
measures to prevent the co-habitation, or even expressed
her disapprobation.  But it must be remembered that all
this had passed.  The daughter had become a charge upon
some one; and needed assistance.  The defendant having
assumed to afford that assistance, he ought not to be exon-
erated, unless the previous censurable conduct of the plain-
tiff will warrant a presumption that she agreed to board her
daughter and daughter's child, for the purpose of subsequent
prostitution.  I do not consider myself at liberty to draw
such a conclusion from the facts disclosed.  The simple
circumstance, that the plaintiff had knowledge of the previ-
ous co-habitation, and did not discountenance it ; seems to
me calculated to awaken remorse for the past; when, per-
haps the omission, on her part, to discharge an incumbent du-
ty to her daughter, had been the cause of her incontinence
and subsequent disgrace.  However that may be, past trans-
gressions do not furnish legal grounds for presuming an in-
tent to sanction their repetition.  Something more is neces-
sary.

If, then, the contract is not impeached for this cause it is
very clear that it cannot be affected by subsequent impro-

prieties on the part of the plaintiff, not shown to have been in contemplation when the contract was made.

With respect to the second assumption to pay, the remarks already made are equally applicable. There is this difference, however, in the two cases : In the latter, it does not appear that the defendant ever co-habited with the daughter, after the contract was made. The witness says, that *soon after* the birth of the second child, the defendant made the promise ; and the plaintiff knew of the co-habitation before the birth of James, and until *after* the birth of Susan. The question is, how long after ? Was it subsequent to the promise, which is stated to have been made " soon after ' the birth ? This cannot be affirmed. The evidence leaves the fact undecided. It would therefore, be a perversion of law and justice, to impute an immoral act on such ground.

Whenever any thing is done directly in furtherance of immorality, the maxim, *ex turpi causa, non oritur actio*, applies, as in *Girardy* v. *Richardson,* (1 Esp. R. 13,) where the rooms were let for the expressed purpose of prostitution. In the case of *Gray* v. *Matthias,* (5 Ves. 291,) a voluntary bond, given during co-habitation, to a woman, previously of a very loose life, was held to be unimpeached, although the parties co-habited together until the death of the obligor ; but a second bond expressly securing a continuance of the connexion, by an annuity in case of separation, was held to be void at law. This shows very clearly, that the party's previous course of life, however abandoned, and connexion after the contract, do not invalidate it. The test is, does it appear by the contract itself, or was there any understanding of the parties though not expressed, that the connexion was to continue ? The case of *Dillon* v. *Jones,* (cited in 5 Ves. 291,) and commented on by *Macdonald,* Ch. Baron, who delivered the opinion of the court, was this : The parties had cohabited together for some time, when a bond for £3000 was given. They lived together afterwards, until they quarrelled. The defendant was asked whether the security was given as the price of prostitution ? She said no: no consideration of that kind was coupled with it; adding, " but perhaps he might mean to attach me." Ld. Bathurst would

not interfere, but upon the terms of paying the money into court. This case shows, that the fact of there being any understanding must be proved. It is much stronger than the present. The appearance of the transaction might well excite suspicion, that he who was co-habiting with a woman at the time he bound himself to pay her a large sum of money, intended a continuance of that connexion; and that this entered into the views of the parties when the contract was made. Yet the law will not allow the inference of an illicit purpose from such facts. In the case of *Bowry* v. *Bennett*, (1 Campb. Rep. 348,) the defence was, that the articles sold were for the purpose of enabling the defendants to carry on her business of prostitution. Ld. Ellenborough held, it must not only be shown that the plaintiff had notice of the defendant's way of life; but that he sold the clothes, to enable her to carry it on. It is evident, therefore, to my mind, that enough has not been shown to render this contract void; and that the question ought not to have been submitted to the jury.

The next question is, whether the giving of the note amounted to a discharge of the plaintiff's claim. No presumption of this kind can arise; for the plaintiff's demand was not allowed when the note was given. This appears clearly from the evidence.

Whether the plaintiff consented to give the note as the balance due to the defendant; and look exclusively to her daughter, on the promise she made was, in substance, submitted by the judge to the jury; and found against the defendant. I think they judged correctly. My impression is, that the plaintiff never intended to discharge the defendant until paid. Her daughter stated, that by her settlement with the defendant, she was to pay those charges; and that this appeared to satisfy the plaintiff. This amounts to but little at most. The plaintiff said nothing; and, if concluded, it must be b/ cause the opinion of a witness is to be substituted for facts.

The motion for a new trial must be denied.

New trial refused.