ABIJAH MANN, Jr., Appellant, *v.* EGBERT H. FAIRCHILD and HENRY R. JAMES, Executors, etc., Respondents.

Where a party brings an equitable action he must maintain the same on equitable grounds, or fail, even though he prove a good cause of action at law on the trial.

The receiver of an insolvent corporation cannot, by sale or otherwise, divest himself of his trust powers.

*Hence,* upon the sale by the receiver of the assets of such insolvent corporation, the purchaser acquires no right of action against a former trustee of such insolvent corporation, to require him as such trustee to account for any assets of such corporation remaining in his hands.

THE plaintiff, on the 2d September, 1846, purchased, at a sale made by the receiver of the St. Lawrence Bank, certain claims against one Egbert N. Fairchild, who had been the cashier of said bank, and who was the testator of the present defendants, his executors. The sale of the said claims was made at Albany by Ransom H. Gillett, who was such receiver. It appeared in the case that the plaintiff was the attorney and counsel of the Farmer's Loan & Trust Company, and was authorized to act for them according to his discretion. That the plaintiff purchased these claims in his name for the said company and in their behalf, and he so declared at the time; that upon reporting to the said company his action and the sums bid by him, they were dissatisfied with his action thereon, that thereupon the plaintiff by agreement with them, assumed the purchase in his individual name and right.

The plaintiff commenced this action in July, 1850, upon the claims so purchased. The action was in equity, and called upon the defendant to account for the assets and effects of the said bank that remained in his hands, etc.

Issue was joined therein, and the issues so joined were referred to H. W. Robinson as sole referee to hear and determine.

The referee found as facts and conclusions of law as follows:

That the St. Lawrence Bank was organized in 1838, under and by virtue of the act entitled "An act to authorize the business of banking, passed April 13, 1838;" had a board of nine directors, a president and cashier.

That its place of business was Ogdensburgh.

That said bank suspended specie payments for a few days in March, 1841, at its agency in New York, but not at its counter.

That said bank was then insolvent, but was not at the time supposed to be insolvent by its officers.

That it finally suspended and failed December 3, 1841.

That Baron S. Doty was its first president, and held the office until the spring of 1841. That Henry Van Rensselaer was its president from that time until it ceased to exist.

That the defendant was its cashier during the whole period of its existence.

That on the 25th day of October, 1841, a resolution or proceeding, which is copied in the complaint, was entered on the book of minutes of said bank by authority of the directors of the bank there named.

That on the 3d of December, 1841, another proceeding or resolution, which is also copied in the complaint, was entered in the book of minutes of said bank by authority of the directors there named.

That on the 14th of May, 1842, another resolution, which is also copied in the complaint, was entered in the book of minutes of said bank by authority of the directors there named.

That no inventory of the property or effects was made or delivered to the defendant, or any other person, nor any formal assignment executed pursuant to either of said resolutions.

That no delivery was made nor any possession taken by the defendant of any of the property or effects of the bank under either of said resolutions or proceedings; but the directors of the bank continued in the management, possession and control of the property and effects of the bank thereafter the same as before, until the delivery of the remain-

ing effects to Henry Van Rensselaer as hereinafter mentioned.

That from the time of the failure of the bank in December, 1841, until the 28th of July, 1842, the directors and officers of the bank were engaged in settling and winding up its affairs, collecting its debts, retiring its circulation, returning its circulating notes so drawn in, to the comptroller for cancellation.

That their collections on the debts due the bank were made mostly in the bills of the bank. The amount or value of the assets was not shown.

That the amount of the circulating notes. of the bank, so drawn in and surrendered to the comptroller during that time, was $87,963.

That the directors continued to meet once a week, or oftener, and transact the business of the bank until July 28, 1842.

That during the greater part of that time the defendant was absent from Ogdensburgh, and Wm. H. Hoard, the clerk of the bank, acted as cashier there, under direction of the board of directors and the vice-president.

That Henry Van Rensselaer was a creditor of the bank for a large amount, and was indorser upon paper made for the benefit of the bank, to the amount of about sixty thousand dollars.

That in consideration of such indebtedness and liabilities, on the 28th of July, 1842, the directors of the bank resolved, at his request, to transfer to him the remaining effects of the bank, which nominally amounted to about $28,000, and directed the cashier to deliver the same to him accordingly, and he did so.

That at the same time the defendant executed the assignment set out in the complaint.

That among the effects of the bank remaining at that time, was a debt due from the defendant to the bank, of five thousand dollars, upon the promissory note of the defendant, which by the agreement of July 28, 1842, said Henry Van Rensselaer agreed to assume; in consideration of which the

defendant agreed to and did transfer and deliver to him on the 1st of November, 1842, five bonds of the State of Arkansas for $1,000 each.

That the said Van Rensselaer compromised several of the debts, and took securities for some, and managed the said remaining assets of the bank until the spring of 1843; and, on the 1st of November, 1842, the defendant paid him the five Arkansas bonds.

That on the 24th day of February, 1843, Ransom H. Gillett was appointed by the chancellor receiver of the St. Lawrence Bank and gave the requisite bond on the 10th of March, 1843, and entered upon the discharge of the duties of the office.

That said receiver, in the spring of 1843, demanded of said Van Rensselaer the effects of the bank which had been transferred to him, and said Van Rensselaer gave them up to him in the condition they then were in, the receiver ratifying and adopting the acts of Van Rensselaer in changing the securities.

That instead of delivering the Arkansas bonds to the receiver, the said Henry Van Rensselaer bought them from him at a price agreed upon. That the receiver sold the bonds to said Van Rensselaer, with full knowledge of all the facts, but claimed that they did not pay the defendant's debt for the alleged reason that they never belonged to defendant.

That said five Arkansas bonds so delivered to said Van Rensselaer were, when delivered, the property of the defendant, and not of the bank. And neither the receiver nor the plaintiff has ever offered to return them, or their proceeds, or value to the defendant.

That the said receiver after said settlement with said Van Rensselaer, brought an action of trover against said defendant to recover for a conversion of said bonds, and the same was finally discontinued after the purchase of the demand by the plaintiff in this suit.

That on the 2d day of September, 1846, the said receiver sold at public auction what remained of the property and

effects of the bank, and the plaintiff purchased the several articles or items enumerated in that behalf in the complaint, in his own name, as agent of the Farmers' Loan & Trust Company, and avowing that such was made by him as agent for the Farmers' Loan & Trust Company, but subsequently, and previous to the execution to him of the several assignments by said receiver, arranged with the said Farmers' Loan & Trust Company to take such purchases upon his own account. That the plaintiff was then an attorney and counselor at law, solicitor and counselor in chancery, and purchased the said demands for the purpose and with the intent to bring a suit or suits thereon.

That on the 7th day of December, 1846, the plaintiff filed his bill in the late Court of Chancery against the defendant for the same causes of action set forth in the complaint in this action. The defendant plead thereto that the plaintiff was an attorney and bought the demands for the purpose and with the intent to bring a suit thereon. To which plea the plaintiff replied, denying the same. The said issue was tried before the Supreme Court in 1848, and a decree was duly made therein, dismissing the complaint with costs. After the entry of which decree, and before enrollment, the Supreme Court, at Special Term, ordered the same amended by adding the words "without prejudice to the right of the plaintiff to commence another action for the same cause."

That this suit was commenced September 1, 1850, and not within six years; but was commenced within ten years after any of the alleged causes of action accrued. And the said referee finds the following conclusions of law, viz.:

That the defendant is not liable to account to the plaintiff as a trustee for the assets or effects of the St. Lawrence Bank, or any part thereof.

That the plaintiff did not purchase, and the receiver did not sell any right to call the defendant to account as a trustee for any of the assets of the St. Lawrence Bank.

That the several resolutions for assignments by the bank in trust for its officers, were absolutely void.

That the claim of the plaintiff to recover for the conversion of Arkansas bonds, and for the alleged indebtedness of the defendant to the bank, upon the note of $5,000 held by said bank, and the book account of said bank, is barred by the statute of limitations.

That the receiver, by accepting of payment of the value of the bonds with full knowledge that they were received in payment for defendant's debt, was estopped from claiming to recover that debt, and his assignee has no better right.

That the plaintiff's purchase was made in violation of the prohibitions of the seventy-first section of article three, title, two, chapter three of the third part of the Revised Statutes, and that the plaintiff, by such purchase, acquired no right of action upon said claims and demands.

That the plaintiff has no equity in this action.

That the complaint ought to be dismissed with costs.

Judgment was thereupon entered for the defendant, dismissing the complaint, and for $298.82 costs for defendant.

This judgment was affirmed on an appeal to the General Term in the second judicial district, and an appeal was taken from thence to this court.

*Thomas H. Rodman,* for the plaintiff.

*W. C. Brown,* for the defendants.

POTTER, J. This action, as appears by the pleadings, especially by the complaint and prayer or demand for judgment, is an action in equity, and seems to be based upon the theory that the defendant was a trustee of the St. Lawrence Bank, by virtue of certain resolutions, passed by the board of directors of said bank, or by virtue of an assignment made to him by said directors. If this theory, and the facts upon which it is based, shall fail, the action must fall, because, if the claim exists only at law, the statute of limitations set up makes a legal defense to it, as this action was not commenced within six years after the alleged cause of action accrued. If a party brings an equitable action, even now, when the same court administers both systems of law and equity, the

party must maintain his equitable action upon equitable
grounds, or fail, even though he may prove a good cause of
action at law, on the trial. (*Heywood* v. *The City of Buffalo*,
14 N. Y., 540.) The referee has found, as a *fact* in the case,
that the defendants' testator did not take possession of any
of the property or effects of the said bank mentioned in the
resolutions or proceedings referred to in the complaint. This
finding has not been reversed; there was testimony to sustain
such a finding, and this court, in their review, are to regard
this as true. The referee has not found that Fairchild took
possession of any of said assets under the assignment made
to him, but, on the contrary, he has found that the directors
of said bank transferred to H. Van Rensselaer the remaining
assets of the bank, and directed Fairchild, who was their
cashier, to deliver the same to Van Rensselaer, and that
Fairchild did so deliver them to him accordingly. This
delivery, at the direction of the bank, was their delivery, and
he, as their cashier, in obeying their direction, was not acting
for himself individually, but for his principals. True, he
signed the transfer to Van Rensselaer, but it appears uncon-
tradicted that he first refused to sign it, on the ground that
he did not hold the property as assignee, and only signed it
upon advice of counsel, so as to cut off any claim to it by
reason of the assignment to him. As the execution of this
paper is the only evidence of his *possession*, and there being
no finding that he ever had possession or accepted the trust,
it was proper evidence not to contradict the writing, but to
negative the question of his possession; and, as part of the
*res gestœ*, to show his denial of *possession;* but we need not
look beyond the finding of the referee in this regard. No
objection being raised to this evidence of possession, this fact
could not be reviewed, even if it was error. In my view,
therefore, the defendants' testator could not be and was not a
trustee of the bank in any sense.

But, if we are mistaken in this view, and if he was such a
trustee, as matter of law, what right has the plaintiff shown
to call him to account? If, by virtue of his office as cashier,
or otherwise, he became trustee, it was for the bank, or for

their creditors, or the stock holders. All these rights to assets in his hands, which so belonged to the bank, it is shown, passed to the receiver upon his appointment, in fact as well as at law. All rights which the bank had held to assets or debts due them from or in the hands of any of their debtors passed to the receiver. On the 24th of February, 1843, the receiver sold to the plaintiff, at public sale, as such receiver, five several demands, enumerated as follows :

1. A demand against Egbert N. Fairchild, of Ogdensburgh, for six Arkansas State bonds of $1,000 each on which a suit has been commenced in the Supreme Court, and is now pending.

2. A demand against Egbert N. Fairchild for certain furniture belonging to the bank, taken by him.

3. A demand against Egbert N. Fairchild, of Ogdensburgh, for a balance supposed to be due from him on the books of the bank.

4. A claim against Fairchild and Bacon for any balance due from them to the St. Lawrence Bank, not heretofore settled by them.

5. All the rest and residue of the property and effects of the said bank of whatever name or nature.

By this purchase, the plaintiff obtained all the title to these claims that was in the receiver, which was all the title the bank owned, before the receiver was appointed. The plaintiff makes no claim against Fairchild, under the fifth division of items. The other four were legal claims only, so that a several action in *equity*, to recover for either of them, would not lie, I do not see how the consolidation of them into one action, changes their character so as to sue in *equity*. They were still legal claims. If it be true that the receiver, before the sale, was officially the *cestui que trust* for creditors, the plaintiff did not buy this trust. The plaintiff held the claims when purchased, in his own right, for his own use and benefit, and not for others. The plaintiff did not purchase the trust. The receiver could not divest himself of this trust power to another; it was a trust only reposed personally in him, in confidence, by the court; he could not assign or convey a

trust; it did not pass with the conveyance of each claim; it was not a thing to be scattered and divided to several vendees, who purchased demands at this public sale, in due proportions, so as to enable each to act as trustee, for the enforcement of his purchased claim. The receiver did not profess to sell it, accompanied with a trust, and had there been a liability on the part of Fairchild to account to the receiver for the benefit of creditors, it did not pass to the plaintiff by this sale. True, all equitable claims of the bank, against individuals, passed to the receiver, and it is equally true, that the receiver had the same power to sell to others equitable claims, as he had legal ones, and the purchaser of an equitable claim takes with the claim the right to sue it in equity, but as the argument that the claim in question is of an equitable character, seems to depend upon its being a trust, we have proceeded to show that it has no trust features connected with it. I do not intend to say that the receiver is a trustee, by virtue of his office, I think it is otherwise, he is the mere officer of the court, accountable only to them for the performance of his duties.

If we are right in this view, that the plaintiff's claim was strictly a legal one, and that he has shown no right in equity to recover, nor shown a case in which the courts of law and equity have concurrent jurisdiction, then the six years' statute of limitations applies to his demand, and the judgment should have been, as it is, for the defendant. (2 R. S., 301, 1st ed., §§ 49, 50, 52; Code, § 97; *Borst* v. *Corey*, 15 N. Y., 505, and cases cited at pages 509, 510.) The case of *Mann* v. *Fairchild*, reported in 14 Barb., 548, is not to be regarded as *res judicata* of this matter, and certainly does not bind this court on the ground of the rule of *stare decisis*. Nor is the view we have taken now in conflict with the holding of the court in 14 Barbour. The decision there was upon demurrer upon the assumed truth of the allegations in the complaint, which was in equity for an account. Here, the case stands upon facts found by the referee, showing a legal debt, if any, and not a case in equity, so that our holding does not even overrule the decision in 14 Barbour.

Another ground, and from the briefs and arguments of counsel it would seem to be the principal ground upon which the case is to be decided, is, "that the plaintiff, at the time he purchased the claims or things in action, upon which this suit is brought, was an attorney and counselor at law, and solicitor in chancery, and that he bought the demands with the intent to bring the action thereon, that the purchase was therefore illegal, and prevents a recovery thereon."

The statute in this regard (2 R. S., 288, marg. paging, § 58), provides, that "no attorney, counselor or solicitor, shall, directly or indirectly, buy, or be in any manner interested in buying, any bond, bill, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing any suit thereon." And section sixty-two of the statute makes such buying a misdemeanor.

The referee in this case has found as a fact, that the plaintiff, at the time of the purchase of the claims in this suit, was an attorney and counselor at law, and solicitor and counselor in chancery, and that he bought the said demands with the intent to bring a suit thereon. There is evidence in the case to sustain such a finding. The judgment being affirmed at General Term, without reversing this finding of fact, we are not at liberty here to question this finding, unless it be that, notwithstanding such a finding, such intent could not exist as matter of law.

It is urged that, as matter of law, this purchase was not obnoxious to the provisions of this statute for two reasons: First, that the sale was a judicial sale; and, second, that the purchase was made in the name of the Farmer's Loan and Trust company, and not in the name of the plaintiff.

The statute we have cited is as general in its terms of prohibition as is reasonably possible, in order to forbid the buying or being interested in buying by an attorney, etc. There is no exception, it applies in terms to all purchases. Did the plaintiff buy these claims? How otherwise did he obtain them? Did the loan and trust company buy at the receiver's sale? If so, then the plaintiff must have purchased of them, but he testifies himself that he purchased in his

own name, but announced to the bidders that he was pur-
chasing for the trust company. On reporting his action to
the trust company, they were dissatisfied, and desired him
to retain them himself, which he did. The sale was not
consummated until after this agreement with the trust com-
bany; then the nominal purchase made in the plaintiff's
name was completed by the plaintiff's paying his own
money to the receiver, and taking the receiver's transfer to
himself. These facts, I think, constitute this a purchase by
the plaintiff; we shall best ascertain the intent of this
statute by finding the object which the legislature had in
view in its enactment. The first statute of this State, on
this subject, seems to have been passed in the year 1818,
chapter 259. Its title, as well as its provisions, clearly
indicate its intent. It is entitled "An act to prevent abuses
in the practice of the law, and to regulate costs in certain
cases." The first clause of section one of that act, is in the
language of our present statute, section fifty-eight, above
cited, except. that in the last revision there was added the
words, "*with the intent and for the purpose of bringing any
suit thereon.*" This statute also made the buying, etc., by an
attorney, a misdemeanor, punishable by indictment, fine and
imprisonment. The revisers, in their notes, say, that the
words above italicized, were added to make the statute con-
form to the supposed intent, and citing two cases in the
reports, arising upon this provision, which had been supposed
to be somewhat in conflict, viz.: *Van Rensselaer* v. *Sheriff
of Onondaga* (1 Cowen, 458) where it was held that the
above statute of 1818, "never meant to forbid the purchase
of one demand *for the mere purpose of securing another,*"
and the case of *The People* v. *Walbridge* (6 Cowen, 516)
where the court said: "The intent with which an attorney
or counselor buys a note, need not be alleged in the indict-
ment, nor need it be averred that a prosecution has been
commenced on it. It is the act of *buying* that constitutes
the offense. (See *Williams* v. *Mathews*, 3 Cowen, 261;
*People* v. *Walbridge*, 3 Wend., 129, *contra*.) It will thus be
perceived that, by the Revised Statutes, the mere buying is

now, by legislative construction, as well as by the unmistakable language of the statute, not alone sufficient to constitute it a misdemeanor, and doubtless not sufficient to visit upon the purchaser the penal consequences of a loss of the claim purchased, without the fact being also established that it was also "with the intent, and for the purpose of bringing a suit thereon."

Such intent in this case is also found as a fact by the referee. We have looked far enough into the facts to be enabled to say, we find evidence to sustain such a finding; its weight was a question for the referee — not for us. The purchase was made by an attorney; the consideration paid was comparatively small. He had notice before the purchase that the claims were disputed, and, if suits should be brought, would be litigated and defended. When purchased, they were put in prosecution by the plaintiff, and the referee finds the demands were purchased with intent to bring a suit thereon. We think that neither the purchase at a receiver's sale, nor the declaration, or even the fact that the purchase was in the name of another, amounts to an exception in the law; it establishes no justification. The object for which the statute was passed would fail and could always be evaded if such defenses could avail. (*Arden* v. *Patterson*, 5 Johns. Ch., 48.) The case of *Orcutt* v. *Petit* (4 Denio, 233) is not in conflict with this view. If the intimation given in that case, that the plaintiff is to be examined, is sound (the soundness of which I do not concur in), such examination was had in this case. The statute does not demand that the testimony of the plaintiff when so received shall be conclusive; and if the question of intent is for the court, and not for the jury, the referee, who stood in the place of the court, has decided that question. This statute is entirely unaffected by section 303 of the Code, authorizing attorneys, etc., to agree with parties as to their compensation.

Assuming what this court is bound to assume as facts, the purchase in this case was contrary to public policy and to good morals, and is in contravention of the positive statutes

of the State, and cannot be enforced. (*Pennington* v. *Townsend*, 7 Wend., 276.)

There are several other minor points raised on the argument, one of which is as to the form of the judgment — that is, that it should have been a judgment of nonsuit, instead of dismissing the complaint. Without seeing that any injury could result to the plaintiff if the judgment was in another form, it is sufficient to say it is right that judgment should be in favor of the defendant, and for costs, and, if we are right in the position we have taken, another trial could be of no avail to the plaintiff. I think the judgment must be affirmed.

All concur.

Judgment affirmed.