VINCENT v. MORIARTY.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

1. EQUITY—RETENTION OF JURISDICTION TO AWARD COMPLETE RELIEF.
   Where, in an action in equity for an accounting of partnership property, and an award to the plaintiff of her equal share in the combined earnings of the plaintiff and defendant, the plaintiff fails to make out a right to such relief, the court cannot retain the case in order to adjudicate a claim based on a promise, denied by the defendant, to pay the plaintiff for services which are neither alleged nor proved, or a claim for the delivery of personal property, or, in default, damages for detention.

2. CONTRACTS—IMMORALITY—PARTNERSHIP—ACCOUNTING—PLEADING.
   A widow who had been living for years in meretricious relations with a man, with knowledge that he was married, brought an action against him in equity, alleging the illicit relationship as the consideration for a partnership agreement between them, and seeking an accounting as to property accumulated by them. The complaint was later amended to merely allege that they lived together "in consideration of mutual love and affection," and an agreement for joint accumulation of partnership earnings. *Held*, that this must be read in the light of the original com-

plaint, and that the claim for an accounting, growing directly out of the immoral agreement, was not tenable.

3. WORK AND LABOR—IMPLIED CONTRACTS—ILLICIT RELATION.

In order that a woman may recover for her services as housekeeper for a man with whom she has been living in meretricious relations, an express promise to pay her must be established.

Appeal from special term, Kings county.

Action by Mary N. Vincent against William A. Moriarty. From a final judgment entered on a decision in favor of plaintiff, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

James Troy, for appellant.

Rufus L. Scott, for respondent.

GOODRICH, P. J. The plaintiff in this action presents a most extraordinary basis as the foundation of a demand for equitable relief. The original complaint alleged that in March, 1885, the plaintiff, "then and ever since being a widow, entered into a co-partnership agreement with the defendant, with whom she had previously been living, whereby it was agreed by and between the plaintiff and defendant that they should live and cohabit together, and eventually with hopes to enter into the lawful matrimonial state, and that their mutual earnings should be held and used for their joint benefit and support during their lives, and be their joint property; that, in pursuance of said agreement, they did so live together from that time to October 15, 1896, and that during all that time their several earnings were held in one common fund, and used in common for the maintenance of themselves, their household expenses, and the education and support of their only child, born June 28, 1886, who with themselves constituted their family" during the said period; that in pursuance of such agreement, and for the joint benefit of the parties, the defendant, in March, 1885, purchased and had conveyed to himself a house and lot on Bushwick avenue, Brooklyn; that he paid on account of the consideration $500, and that the remainder was secured by bond and mortgage; that the plaintiff supplied most of the furniture of the house, did the household work, and since the time named had pursued her business of dressmaking, and taken in boarders, and earned money thereby, and that the defendant, as engineer of a steamship, also had earned salary, so that there had been accumulated from the earnings of both parties about $10,000, part of which had been used in payment of the mortgages on the house, which was of the value of $7,000; that in September, 1896, they had about $1,900 deposited in the savings bank; that, at the request of the defendant, the plaintiff drew this out, and gave it to him; and that the defendant took away the child, and turned plaintiff out of the house, in a penniless and destitute condition. On these allegations the plaintiff demanded judgment that the premises be adjudged co-partnership property, and sold at auction, and the plaintiff awarded an equal share in the proceeds, and in the combined earnings, and in the house and lot.

It is difficult to imagine a more audacious challenge to a court of justice, for the enforcement of an immoral contract, than that which appears in this complaint. It will be observed that it contained no allegations disclosing such a condition as arises when a young girl, ignorant and unfamiliar with the wiles of men, is deceived and betrayed into an illicit union, where a court might sometimes be astute in seeking methods to avoid injustice. The present action is that of a widow, whose eyes may be supposed to have been opened by a previous taste of the fruits of the tree of knowledge of good and evil, who alleges that she had contracted with the defendant to enter into a state of concubinage, asking a court of equity to sanction the contract, and award her the price of her shame. It was not singular that, when the case was brought to trial, the court promptly dismissed the complaint on the inspection of the pleadings. The plaintiff was allowed, however, to amend her complaint. The amendments in which we are chiefly interested consist of a change to the following allegations:

"First. That for about two years prior to March, 1885, this plaintiff and the defendant lived together in consideration of mutual love and affection. Second. That in the month of March, 1885, plaintiff and defendant entered into a co-partnership, whereby it was agreed by and between them that the plaintiff should carry on her business of dressmaking, and put her earnings with his, and they together should buy a home, and pay for it out of their mutual earnings, and that their mutual earnings should be held and used in common for their joint benefit and support during their lives; that, in pursuance of said agreement, their mutual earnings were from that time up to October 15, 1896, held in one common fund, and used in common for the maintenance of themselves, their household expenses, the purchasing of a home, and the education and support of their only child, born June 28, 1886, who with themselves constituted their family." "Ninth. That, many times during the period herein stated, the defendant promised to enter lawful marriage as soon as legal difficulties by reason of a former marriage were removed."

The answer to this amended complaint was a mere general denial of all the allegations.

The case came on for trial on the amended issues at special term, when, after taking evidence, the court handed down a memorandum in which it was said:

"No partnership has been shown. The action is properly one for the breach of contract. The complaint states such a cause of action. The defendant has not pleaded that there is an adequate remedy at law, and the court may therefore determine the action on the proofs presented. Upon those proofs, I must find that there was an agreement made between the plaintiff and the defendant, in or about May, 1885, to unite their joint earnings, and, in consideration that the plaintiff would contribute her share thereto, that she should have a home for the remainder of her life, with such benefits as would naturally and reasonably result from the property thus accumulated. This contract has been confessedly broken by the defendant. Upon the breach the plaintiff is entitled to her damages. Those must be determined by determining the value to her of her home, and also what benefit would naturally accrue to her, during her life, from the accumulated property, and as one element therein should be considered the amount of such property which has been contributed from her earnings. * * * The sustaining of illicit relations between the parties has not, in my judgment, necessarily entered into this contract. Those relations existed long before this contract is found to have been made. The fact that they were sustained at the same time that this contract was being preformed does not necessarily make them a part thereof,

and she could at any time refuse to permit such relations without having violated her contract. The contract, therefore, was not vitiated by any illegal element."

The court ordered a reference to take evidence and report conclusions, and, upon the coming in of the report filed a memorandum, in which it was said:

"I think the plaintiff has suffered damage at least to the extent of the value of the services of a housekeeper and caretaker of defendant's property. The damage, therefore, should be assessed at $1,500. The property found by the referee to be the plaintiff's she may have. The balance, found to have been paid for by the defendant, she cannot have."

The decision contained the following:

"It is found and decided that in the month of March, 1885, plaintiff and defendant entered into a mutual agreement to unite their joint earnings for their joint benefit, and, in consideration that the plaintiff would contribute her share thereto, that she should have a home for the remainder of her life. It is further found and decided that the illicit relations between plaintiff and defendant did not enter into nor form a part of said contract, and that said contract was not vitiated by any illegal element; that this agreement was acted upon and continued in force until October 15, 1896; that during said period plaintiff and defendant, by their united earnings, had accumulated certain property, including moneys in bank and a house known as 'No. 911 Bushwick avenue, Brooklyn,' where plaintiff and defendant resided during said period, and that plaintiff was likewise possessed of and owned at said house certain personal property, described in Schedule D of her accounts, filed before the referee herein, and found by referee to be hers; that during said period the plaintiff carried on dressmaking, rented furnished rooms, kept boarders, and took general charge of said house, and, up to a short time before the discontinuance of said business relations, had the custody of the moneys received by them respectively; that in September, 1896, the plaintiff drew from the savings bank the moneys on deposit amounting to nineteen hundred and sixty-four dollars and fourteen cents, at the request of the defendant, and delivered the same to him; that on the 15th day of October, 1896, the defendant ejected the plaintiff from said premises, No. 911 Bushwick avenue, and severed all business relations between them, and retained in his possession said premises and furniture, including the personal property described in Schedule D, and found by referee belonged to plaintiff; the plaintiff is entitled to recover from defendant the sum of fifteen hundred dollars; that she is entitled to recover possession of the personal property described in Schedule D of her accounts, and found by the referee to be hers; and, in default of delivery of the same to her, that she recover the value thereof, to wit, the sum of five hundred dollars and the costs of this action, and an extra allowance of 5 per cent. on the amount of the recovery; and that judgment be entered accordingly."

Upon this decision a judgment was entered, awarding the plaintiff $1,500, and also the recovery of certain furniture and personal property, or, in default of the delivery of the same, that she recover of the defendant $500, the value thereof; and from this judgment the defendant appeals.

Although the plaintiff's theory of her cause of action has been entirely changed from the one set out in the original complaint, yet in our consideration of the case, and in ascertaining what was the actual agreement between the parties, we cannot eliminate the fact that she entered this court alleging the existence of an immoral contract, and asking equitable relief based upon the allegation that the parties had contracted to live, and had been living, in open adultery, and had agreed to continue so to do, and that their mutual

·earnings while so living should be held for their joint benefit.  The court was originally asked to enforce a contract based upon an agreement of the parties to live in open immorality.  As if this were not sufficiently odious, the complaint alleged that the parties "did so live together" for a period of 10 years, during which time a child was born, as the fruit of such cohabitation.  The amended complaint contains the allegation that the parties lived together in consideration of mutual love and affection.  These allegations are nothing other than a statement that the parties cohabited without the sanction of marriage.  It is difficult to see how it was possible for any suitor to ask the assistance or expect the approval of a court of equity in the enforcement of such a contract, so long as the ancient maxims stand that a party must enter such court with clean hands.  Indeed, it is not altogether clear that the demand was not still more extensive, and had its origin in a desire to compel the defendant to continue such illicit relations or to punish him for a refusal to continue them.

The plaintiff admits in her evidence that, when her child was three weeks old, she knew that the defendant had been married; that he told her he did not know whether his wife was living or dead; and that she asked him, for their child's sake, to find out the fact.  The defendant, on the other hand, testified that he explained to her, at or before the beginning of their relations, that he was married, and had several children, and was estranged from his wife; that there was no divorce or cause for divorce; and that it was only a question of time when he and his wife would come together.  Although the plaintiff was recalled as a witness, she did not deny this testimony, either at the trial or before the referee.  On such testimony, it is apparent that, when the parties entered into their illicit relations, the plaintiff knew that the defendant had a wife living, and that cohabitation with the defendant was immoral and illegal.  And we are asked to enforce a contract intimately and immediately connected with and growing out of this cohabitation, alleged in the amended complaint to be a "living together in consideration of mutual love and affection," and which was to culminate in "lawful marriage as soon as legal difficulties by a former marriage were removed."  This can refer to nothing else than the existing marriage of the defendant, the "legal difficulties" to be removed being the estranged and deserted wife, whose death, it was anticipated, might open the marriage door for the entrance of the plaintiff and the defendant.  The plaintiff mistakes the disposition and temper of this tribunal, which will neither assist in enforcing such a contract, nor anything which grows out of or is dependent upon it.  It is true that, owing to the amendment of the complaint, we are not now adjudicating the contract alleged in the original complaint; but it is not possible for us to shut out the light which is shed upon the litigation by the original allegations.

Mr. Pomeroy (1 Pom. Eq. Jur. § 402) clearly states the law, as follows:

"Wherever a contract or other transaction is illegal, and the parties thereto are, in contemplation of law, in pari delicto, it is a well-settled rule, subject

only to a few special exceptions depending upon other considerations of policy, that a court of equity will not aid a particeps criminis, either by enforcing the contract or obligation while it is yet executory, nor by relieving him against it, by setting it aside, or by enabling him to recover the title to property which he has parted with by its means. The principle is thus applied in the same manner when the illegality is merely a malum prohibitum, being in contravention to some positive statute, and when it is a malum in se, as being contrary to public policy or to good morals. Among the latter class are agreements and transfers the consideration of which was a violation of chastity.''

In Trovinger v. M'Burney, 5 Cow. 253, it was held that a promise by the putative father to pay for the board of a woman and her bastard child, the purpose of both parties being to facilitate a continued state of cohabitation between the promisor and the woman, is void, but that the purpose must be clearly proved, and is not to be inferred from a previous cohabitation between them. In the present case the pleadings and the evidence disclose the fact that the cohabitation was continued for a period of 10 years, with full knowledge of its illicit character.

I assume that the complaint was amended after consulting the opinion of the general term of the Fifth department, in Rhodes v. Stone (Sup.) 17 N. Y. Supp. 561, decided in 1892, where it was held that the plaintiff, a woman who had been cohabitating with the intestate, could recover for her services sub nomine, as housekeeper, notwithstanding their meretricious relations. The court held that there was in that case an express promise by the intestate to pay her for such services, and said:

"The respondent cannot rely upon an implied agreement to pay her for her labor. Unless the evidence proves an express promise of the intestate to pay her, the verdict cannot be sustained; and, if the illicit commerce between the parties was any part of the basis of the promise to pay for respondent's labor, the agreement was void. The relations of the parties did not necessarily forbid an express contract between them that the intestate would pay respondent for her labor. Cooper v. Cooper, 147 Mass. 372, 17 N. E. 892."

Cooper v. Cooper was a case where a woman had gone through a form of marriage with a man to whom she supposed she was lawfully married, had lived with him as his wife for many years, had had one child by him, had performed all the duties of a wife, and after his death learned for the first time that he had a wife living, and not divorced from him; and even then the court held that she could not recover from the administrator of his estate, for her services as housekeeper under an implied contract with the intestate, but must establish an express contract to pay.

The plaintiff in this action testified that she knew what was in the original complaint; that she read it and swore to it. She was then asked:

"Q. If the complaint says that in the month of March, '85, she, meaning yourself, and the defendant, whereby it was agreed between the plaintiff and defendant they should live and cohabit together, and eventually with the purpose of entering into the lawful matrimonial state, their mutual earnings should be held and used for their joint benefit and support during their lives and be their joint property— Mr. Scott: I could suggest that he separate that, and ask as to each clause. The Court: Let him try his case. Question continued: Was that true? A. No, sir. Q. Is this true also,—I read from the complaint,—that, in pursuance of such agreement, they did so live to-

gether from that time to October, '96? A. Yes, sir. Q. In pursuance of an agreement which you say did not exist? A. We did not agree to live together as husband and wife. Q. And you did not live together under such agreement? A. No, sir."

It is not difficult to see that the plaintiff, at the time of giving this testimony, had in mind the impossibility of maintaining an action upon the theory of the original complaint. She admits, however, that there was some agreement under which they lived together. She denies that it was an agreement that they should live together as husband and wife; and this may easily be true, as there is evidence tending to show that she knew that the defendant was a married man. That they lived together in illicit relations is apparent from the allegations of the original complaint, and the plaintiff's admissions that she had read it, and knew its contents, when she verified it; and it is proven by the plaintiff's own testimony. We can reach no other conclusion than that the plaintiff is endeavoring to enforce a contract which in the original complaint she alleged was based upon immorality as its consideration, which in the last analysis is still the real foundation of the action in its present condition.

The decision contains the finding "that in the month of March, 1885, plaintiff and defendant entered into a mutual agreement to unite their joint earnings for their joint benefit, and, in consideration that the plaintiff would contribute her share thereto, that she should have a home for the remainder of her life." This finding rests solely upon the unsupported testimony of the plaintiff. It is denied with equal positiveness by the defendant. These two were the only witnesses. There is also marked contradiction between her original verified complaint and the testimony which she gave upon the stand. The plaintiff, therefore, has utterly failed to establish her allegation of partnership or any agreement as to a joinder of earnings. There can be no recovery of damages for the breach of this unproven contract. On the other hand, there is no evidence of any express promise to pay her for her services as housekeeper. Consequently, under the authorities cited herein, there is nothing to sustain the decision of the learned court and the judgment that the plaintiff is entitled to recover her damages, $1,500; for by the case of Rhodes v. Stone, supra, cited by the plaintiff's counsel and by other authorities, the promise to pay for services must be an express promise, not an implied one. I find no evidence in the case of any such express promise, nor any sufficient evidence of any services rendered by the plaintiff in the capacity claimed. Indeed, her testimony shows that whatever she did was done in connection with an unlawful agreement between herself and the defendant, and not upon any other agreement or arrangement whatever. The allegations and the evidence exclude any hypothesis other than that the services were not rendered in view of any relation of housekeeper, or master and servant, but in connection with the maintenance of an immoral household, and for such services the law recognizes no duty of compensation. "Ex turpi causa non oritur actio."

There is another objection to the judgment in this action. It is true that, as the answer did not contain as a defense an allegation of

the existence of an adequate remedy at law, the defendant cannot avail himself of such defense (Lough v. Outerbridge, 143 N. Y. 271, 38 N. E. 292), and that, when the court becomes possessed of the facts in an action, it can give such relief as is legally proper; but here the judgment consists of an adjudication that the plaintiff recover of the defendant $1,500, which in the memorandum of the court is stated to be "the extent of the value of the services of a housekeeper and caretaker of the defendant's property," and also certain furniture and personal property, and, in default of delivery of the same, that she recover the sum of $500. The only damages which could have been given for the detention of the property, as there was no evidence of any diminution in its value, would be the interest on such value. Lockwood v. Bartlett (Sup.) 7 N. Y. Supp. 481. So that it cannot be said that the $1,500 was intended to be damages for detention; and, if it were so intended, it could not be allowed. The Code of Civil Procedure (section 484) permits the uniting of legal or equitable causes of action in one action, where both belong to one of the enumerated classes; but it does not permit the union of an action at law for breach of contract with a claim to recover personal property as on claim and delivery; and it is difficult to see that any power resides in the court to make such union in a final judgment in an action of this character. If the action was to be considered one for damages resulting from a breach of contract, the defendant was entitled to a trial by jury, and by the affirmance of the judgment this right would be defeated.

It is undoubtedly true that in certain cases, as, for instance, in an action for specific performance, a court of equity may adapt its relief to the exigencies of the case, and that it may, where that is all the relief needed, order a sum of money to be paid to the plaintiff, and give him a money judgment therefor (Murtha v. Curley, 90 N. Y. 372; Bailey v. Hornthal, 154 N. Y. 648, 49 N. E. 56); but this is not true to such an extent as to authorize the practical changing of an action in equity into an action at law, and giving a money judgment for damages, where, as here, the existence of the basic contract is denied, and the defendant has had no opportunity of a trial of that question by a jury.

In Wheelock v. Lee, 74 N. Y. 495, 500, Rapallo, J., said:

"Where the complaint is framed solely for equitable relief, and the action is tried as an action in equity, the court, on finding that the plaintiff is not entitled to any equitable relief, but that the facts would warrant an action for damages which he has not alleged or claimed, cannot order judgment for such damages. Bradley v. Aldrich, 40 N. Y. 504. An opportunity must have been afforded to the defendant to claim a jury trial on that ground of action. The respondent claims that the appellant waived his right to a jury trial by consenting that the case be placed on the calendar for trial at the special term, and by noticing the case for trial at that term. We do not think these acts amounted to a waiver. There was no consent that the action be tried without a jury."

In Bradley v. Aldrich, supra, the court laid down the same doctrine, saying (page 511):

"According to the record before us, he [the defendant] was not apprised of any such claim until its declaration, and its maintenance appeared in the decision of the judge; and to that he excepted, which alone he could do."

So, in the case at bar the record discloses no claim in the complaint of any demand by the plaintiff for compensation for her services as housekeeper.    This appeared for the first time in the decision of the learned justice.    If it were necessary to buttress this principle with other authority, it could be done by referring to Mann v. Fairchild, *41 N. Y. 106, 111, and Heywood v. City of Buffalo, 14 N. Y. 534, 540. But the principle is elementary, is based on sound reason, and has abundant illustration of its dangerous character in this case, where judgment was based upon an unstated claim and theory, and for reasons which neither were nor could have been reasonably anticipated by the defendant from an inspection of the pleadings.

This reasoning applies to both of the items in the judgment.    The one is supposed to stand upon a promise to pay for services which are neither alleged nor proven, and for which no express promise to pay is established by the evidence; and the other is for the delivery of personal property, or, in default, damages for detention.    Certainly, neither of the claims can or should be adjudicated in an action of the character into which this action was transformed by the amendment of the complaint, which still must be considered, as shown by the prayer for relief, an action for accounting of partnership property, and an award to the plaintiff of her equal share in the combined earnings of the plaintiff and defendant.

The judgment must be reversed, and a new trial granted.    All concur.

Judgment reversed, and new trial granted; costs to abide the final award of costs.