Van Hoesen, J.
The answer is certainly obnoxious to criticism, but yet I think that the motions aimed at its paragraphs, at the opening of the trial, were properly denied.
There is only one question that it is my purpose to consider, and that question is: Did the evidence warrant the court, or would it have warranted a jury, in finding that a perfect defence had been proved?
First. I call attention to the fact that the fourth paragraph of the answer, which contains the defence that the court below thought sufficient to warrant a judgment for the defendant, though it alleges that various carriages had been unnecessarily taken for repairs to the plaintiffs’ shop, makes no objection to any other charges for repairs than those made for repairs to a landaulet, the words of the answer being, “ this defendant claims and insists that he is not liable for any repairs done to said landaulet by said plaintiffs.” It might well be said that, even if a defence to the charges for repairs to the landaulet was established, it did not entitle the defendant to a judgment in his favor, unless it appeared that no other repairs than those to the landaulet were included in the claim in suit.
Waiving that point, I shall collate the evidence on the subject of the alleged bribery of the defendant’s coachman. Mr. Brewster said: “ It is customary to make the coachmen a little present on the first of January; sometimes it is one dollar; sometimes two or three, and we have sometimes given more— five or six dollars ; now I do not say but we may have given more than that; we always give it even if they do not come, we send it; it is oar rale, and we never deviate; if they do not come we send it; it is a custom imported from the old country. If we did not pay the coachman of Mr. Hatch it would be the first case ; it induces a man to feel more pride in his carriage ; he has to treat his friends; it is a credit to ns, and also to his employers; it is not to induce him to bring work to our shop; *212 if a man should ask for it he would be kicked into the street.”
The coachman said: “ I never received any presents except once a year along holiday time; then we used to get presents. When any. repairs were to be done I took the carriages to Brewsters’. I took them there for repairs without saying anything about it to Hatch. I had orders to take them to Brewsters’ whenever anything was out of order, and have it repaired. I received money from Brewster at different times, at no particular season of the year; I got it, two or three dollars at a time, from the bookkeeper. If I went round there I got it; if I did not go around I would not get it. I did not get it every year, for I did not go. During the time I received the money I was taking the carriages there for repairs ; I received money from Brewsters’ before I went into Hatch’s employment, and after I left that employment.”
It is contended by the defendant that this evidence establishes the fact that Brewster bribed the coachman unnecessarily to incur bills for the repairs, and that the repairs were unnecessary, or would not have become necessary had not the coachman been corrupted by a bribe. I have collated all the evidence in the case, and it is obvious no witness has sworn that any of the repairs were made when a necessity for making them did not exist, or that the coachman purposely or wantonly broke the carriages, or put them in disrepair.
This being the state of the ease, the question arises, had’ the trial judge or would a jury have had a right to infer, from-the.fact that presents were from time to time made by the plaintiff to the coachman, that the repairs were unnecessary, or that the carriages were purposely injured by the coachman ?.
The answer alleges that the repairs were unnecessary, or that they were made necessary by the coachman’s wilful and corrupt act. If that allegation be unproved, the defence is not made out. There must be not only a bribe, but also some act to the injury of the defendant under the influence of the bribe. Just as fraud and damage must concur to give a right of action for deceit, so must injury to the defendant have re- *213 suited from the bribe, in order to constitute a defence in such a ease as this. There was an absolute lack of evidence of injury. An injury cannot be inferred from the mere fact that presents were given by the plaintiffs and accepted by the coachman. The utmost that can be said is that the plaintiffs and the coachman conspired together to do injury to the defendant; but it could not be inferred from such evidence that the conspiracy was carried into execution. While the contract is still executory, and when the principal has derived no benefit from it, the mere fact that it was made by an agent who has been seduced by a bribe from allegiance to his principal. is of itself a defence to an action brought to compel its performance, or to recover damages for its breach.
The case of Smith v. Sorby (3 Q.B. Div,, 552; s. c., 28 Moak. Eng., 455, note) is in point. There the agent, who managed the defendant’s colliery, entered into an agreement with the plaintiff that the plaintiff should supply fifty wagons for use in the colliery for five years, and that the hire of the wagons should be paid for either in money or in coals, at the then market rate (which was six shillings a ton), at the defendant’s option. Immediately after making this agreement, the plaintiff promised to pay to the agent, as a commission, £1 for every wagon, £10 as a bonus. The plaintiff said that he did this in hopes of further business. Before the time for the performance of this contract had arrived, the plaintiff and the defendant’s agent, without the defendant’s knowledge, altered its terms, so that the plaintiffs were relieved from the obligation to furnish wagons, and the defendant was bound to furnish to the plaintiff 12,000 tons of coal at 6s. Gd, per ton. The price of coal rose to £1 per ton, and the plaintiff demanded the delivery of the coal at- 6s. Gd. per ton. Upon the refusal of the defendant to deliver the coal, an action for breach of contract was brought.
Baron Pollock instructed the jury that the giving of the commission to the agent, though improper, was not necessarily fraudulent, and that in order to vitiate the contract on the ground of fraud, there must have been an intention .on the *214 part of the plaintiff to induce the agent to bet: ay the defendant’s interests, and the mind of the agent must, have been corruptly affected by such inducement.
The jury found for the plaintiff, but on appeal taken a new trial was granted, Cockburn, Oh. J., saying: “ It is unnecessary to decide whether the secret payment of a gratuity to an agent by the party with whom he is negotiating on behalf of his employer, supposing it to have had no effect at all upon the mind of the agent, will vitiate the contract made under such circumstances. It is sufficient to say in the present case, if a party with whom an agent is negotiating on the part of another, agrees to give or does give to the agent a secret gratuity, and that gratuity does influence the mind of the agent directly or indirectly in assenting tp anything prejudicial to his employer in making the contract, the contract is vitiated. Now, on looking at the facts of this case, we see that the first agreement was beneficial to the defendant, for it gave her an option to pay for the wagons in money or in coals, which, as it turned out, would have been an advantage to her. Under the second agreement the defendant was to have no option but became ! bound to deliver the coals at a fixed price, which was very disadvantageous to her. If, in assenting to this fresh arrangement the agent was influenced by the gratuity, then I think the principle I have laid down would apply, and the conn would be vitiated. We all agree that the giving of sucu gratuities is highly improper and morally objectionable, because they are necessarily calculated to sap the fidelity of the agent towards his employer.”
The learned judge then discussed the evidence, and coming to the conclusion that it showed that the agent had made the second agreement under the influence of the gratuity, said: “ The jury should have been told that if the gratuity was given to the agent in order that he might have a favorable disposition towards the party giving it, and it had that effect, and he was thereby induced to enter into the second contract, that was quite enough to vitiate the second contract.”
■Blackburn, J., said: “ There is no dor bt that the giving *215 of a secret gift or gratuity to an agent is very improper. I am not prepared to say that there is an absolute presumption, proisumpiio juris et de jure, that the giving of such a. gratuity amounts to fraud. I think it is a question for the jury, and if they think that the gratuity was without the knowledge of the principal, and with the intention of influencing or biasing the mind of the agent in favor of the person giving it, and that it did so bias the mind of the agent, and thereby acted as an inducement to him in entering into or carrying out a contraer, then they ought to find that there is what amounts to ai'raud.” Like Cockburn, Oh. J.,-Judge Blackburn thought the evidence in that case proved that the agent in making the second contract was biased in favor of the plaintiff, as the latter, when he gave the gratuity, intended that he should be, and that the verdict ought to have been for defendant. A new trial was granted, the ground being that the charge of the trial judge did not, upon the whole, clearly present the case to the jury.
There are several points of difference between that case and this. There, there was proof of injury to the defendant’s interests; here, there is no such proof. There the contract was still executory, and the defendant was not in possession of benefits that resulted from the performance by the plaintiff of the contract upon his part. Here the defendant has received and enjoyed the fruits of the plaintiff’s labor. Of course there can be no rescission. The defendant must retain the benefit that he has derived from the repairs upon his carriages, and if the plaintiff is to be deprived of all compensation for the work that lie has actually done, he may be injured, and the defendant advantaged to a degree not indicated upon any scale of justice.
The most that the defendant- can say is, that the plaintiff has been guilty of fraud, and the severest punishment that ought to be inflicted upon him is that which would be visited upon a fraudulent contractor. How does the law deal with fraud % It rescinds a contract procured by fraud where rescission is possible. It denies its aid to compel the performance of a contract tainted with it; and, where.the situation of the *216 parties lias been so changed that rescission is impossible, it compensates the injured party by an award of damages. Within the last of these classes the case of the defendant falls. If he shall prove that- he has been injured by the plaintiff's bribery of the coachman, he may recover damages against-the plaintiff. If lie can show that the payment of the gratuity led the coachman purposely or recklessly to break the carriages, that a pretext for sending them to the repair shop might be found, the plaintiff, if -lie intended to bias the coachman in his favor by giving the gratuity, will lose the item for repairs upon carriages so broken, and should answer to the defendant for the loss-of the use of such carriages, and for their .deterioration in value. If repairs that were unnecessary were made, the plaintiff ought not to recover for them, but should lie compelled to pay the defendant for the loss of the use of the vehicles while they were at the repair shop. But it is for the defendant to prove that he has been damaged by fraud, and that proof he did not offer in the court below; damage was presumed, not proved, and in that presumption there was error, for which the judgment should be reversed.
It is to" be hoped that before the next trial the answer may be so amended that the case may be disposed of upon its merits, and not upon niceties of pleadings.
Judgment reversed, new trial ordered, costs to abide event.