HENRY BREWSTER *et al.*, Appellants, *against* RUFUS
HATCH, Respondent.

(Decided March 13th, 1885).

The fact that an agent was induced by bribery to make a contract on
behalf of his principal, is not, of itself, after the contract has been per-
formed and the principal has derived benefit therefrom, and there can be
no rescission, a defense to an action to recover compensation for such
performance; evidence of some injury to the principal resulting from the
bribe is also necessary to constitute a defense; and such injury cannot be
inferred from the mere fact that presents were given by the plaintiff to
the agent and accepted by the latter.

APPEAL from a judgment of the General Term of the
City Court of New York affirming a judgment of that court
entered on the verdict of a jury and an order denying a
motion for a new trial.

The facts are stated in the opinion.

*Wm. H. Arnoux* and *Austin Huntington*, for appellants.—
I. The ruling of the court, that as matter of law the evi-
dence disclosed that the claim of plaintiffs was absolutely
void as against public policy, was erroneous.

To hold, in the absence of any legislative enactment, that
certain acts not heretofore brought within the ban of public
policy were void for that reason, is to impose upon the
community court-made law, which has been invariably con-
demned by the most distinguished jurists, and which experi-
ence proves to be a very unreliable guide (Benjamin on
Sales, § 513 n.; 4 Blacks. Comm. 158; Story on Sales, 647
§ 490; Ellis & Bl. 47; *Hollis* v. *Drew Seminary*, 95 N. Y.
171, 172; *King* v. *Waddington*, 1 East 143; *Masters* v.
*Miller*, 4 Term 320; *Curtis* v. *Leavitt*, 15 N. Y. 9; *But-
terworth* v. *O'Brien*, 23 N. Y. 275; *Richardson* v. *Mellish*, 2
Bing. 229; *Piatt* v. *Oliver*, 2 McLean 300).

There was nothing whatever in the transaction in ques-

tion which violated any public policy, for to bring any transaction into the condemnation of *malum prohibitum* or *malum in se*, the evil must enter into and be a part of the original transaction itself. If the contract when made is free from turpitude, no subsequent act can taint or vitiate it (Story on Sales, §§ 488, 490; *Sedgwick* v. *Stanton*, 14 N. Y. 289; *Hook* v. *Pratt*, 79 N. Y. 371; *Todd* v. *Weber*, 95 N. Y. 181; *Bell* v. *Leggett*, 7 N. Y. 176; *Birch* v. *Jervis*, 3 Carr. & P. 380; *Tracy* v. *Talmadge*, 14 N. Y. 162, 179; *Holman* v. *Johnson*, Cowp. 341; *Hodgson* v. *Temple*, 5 Taunt. 181; Benjamin on Sales, Bk. III., c. III.; Broom's Maxims, 4th ed. 711, citing *Wetherell* v. *Jones*, 3 Barn. & Ad. 225, 226, and *Redmond* v. *Smith*, 8 Scott N. R. 250; *Phillips* v. *Wooster*, 36 N. Y. 412).

The evidence disclosed that there was nothing whatever that violated public policy in respect to the transaction in question. There was no evidence that defendant's servant was improperly influenced in any instance. There was no evidence that the interests of defendant were jeopardized or prejudiced in any manner. The case was utterly without a scintilla of proof on the questions of overcharge, improper charge, unnecessary repairs, improper workmanship, defective materials. The court is bound to assume that the work was well done and the charges reasonable, just and proper. When the act which is the subject of the contract may, according to the circumstances, be lawful or unlawful, it will not be presumed that the contract was to do the unlawful act; the contrary is the proper inference (Broom's Maxims 4th ed. 715, citing *Lewis* v. *Davidson*, 4 Mees. & W. 654; *Garrard* v. *Hardey*, 6 Scott N. R. 477; *Jackson* v. *Cobbin*, 8 Mees. & W. 797; *Harrison* v. *Heathorn*, 6 Scott N. R. 735; *Morris* v. *Talcott*, 96 N. Y. 100).

There is nothing in any decision that militates against this view (examining and explaining or distinguishing *Panama &c. Tel. Co.* v. *India Rubber &c. Co.*, L. R. 10 Ch. 515; *Kedian* v. *Hoyt*, 33 Hun 145; *Gillette* v. *Peppercorn*, 3 Beav. 78; *Morrison* v. *Ogdensburgh &c. R. R. Co.*, 52 Barb. 173; *Richard* v. *Quintard*, 57 N. Y. 656; *Smith* v. *Albany*,

60 N. Y. 444; *Pearce* v. Brooks, L. R. 1 Exch. 212; *Cannon* v. *Bryce*, 3 Barn. & Ald. 179).

II. The ruling of the court that the proof established that the claim of plaintiffs was void as against public policy was erroneous.

The proof did not sustain the plea interposed by the defendant on that behalf.

The plea, as it was interposed, did not warrant the ruling and direction of the court.

The utmost that a party can recover under such a plea is the damage that he has sustained by the wrongful acts complained of. In certain cases of fraud or illegal transactions, where contracts remain executory, they may be rescinded. In other cases, where they have been performed on one side, restitution may be made and the contract rescinded. In all other cases the parties are limited to the damages sustained. Here, the party makes no restitution and avoids all payment.

III. Plaintiffs were entitled to judgment upon the pleadings and proof, and the denial of their motion was erroneous.

The allegation in the complaint that defendant was indebted in the sum of $445.42 upon an account for goods sold and delivered, &c., stated in legal form a cause of action (*Moffett* v. *Sackett*, 18 N. Y. 522; *Allen* v. *Patterson*, 7 N. Y. 476).

The answer of defendant admits all the allegations of the complaint. There is no general denial, but, on the contrary, there is a specific admission as to the goods sold. The failure to deny is an admission as solemn and conclusive as a direct admission (*Dunham* v. *Cudlipp*, 94 N. Y. 129; *Fleischman* v. *Stern*, 90 N. Y. 110; *Marston* v. *Swett*, 66 N. Y. 206, 210; *White* v. *Smith*, 46 N. Y. 418; *Tell* v. *Beyer*, 38 N. Y. 161; *West* v. *American Exchange Bank*, 44 Barb. 175; *Paige* v. *Willet*, 38 N. Y. 28–31; *Robbins* v. *Codman*, 4 E. D. Smith 315; *Platt* v. *Oliver*, 1 McLean 303; Broom's Maxims 4th ed. 714).

The bill of particulars having been served with the complaint is to be deemed a part of the complaint itself, and the

admissions of the answer are admissions of the items in the bill of particulars (*Matthews* v. *Hubbard*, 48 N. Y. 488; *Melvin* v. *Wood*, 3 Abb. Ct. App. Dec. 272).

Plaintiffs did not waive their right to make this motion or to stand upon the admissions of the complaint by giving proof to sustain their cause of action (*Paige* v. *Willett*, 38 N. Y. 28, 31).

IV. The motion for judgment upon the pleadings in the nature of a demurrer *ore tenus* to the sufficiency of the answer could be made at any time, and should have prevailed when made (*Tooker* v. *Arnoux*, 76 N. Y. 397; *Coffin* v. *Reynolds*, approved in *Schuyler* v. *Smith*, 51 N. Y. 317; *Munger* v. *Shannon*, 61 N. Y. 260, 261; *Emery* v. *Pease*, 20 N. Y. 62; *Winsted Bank* v. *Webb*, 39 N. Y. 325; *Van Alstyne* v. *Freday*, 41 N. Y. 174; *Marquat* v. *Marquat*, 12 N. Y. 336; *Montgomery Bank* v. *Albany Bank*, 7 N. Y. 459; *Clift* v. *Rogers*, 25 Hun 39, 43; *Gould* v. *Glass*, 19 Barb. 179; *Higgins* v. *Freeman*, 2 Duer 650; *Gray* v. *Palmer*, 2 *Robt.* 500; *Budd* v. *Bingham*, 18 Barb. 494).

*Robert Sewell, Aaron J. Vanderpoel*, and *John Graham*, for respondent.—The defense of bribery or *quasi* bribery of defendant's agent, tainting the whole claim with illegality, is good in law. It presents a case of bribery or *quasi* bribery of an agent which, if not prohibited by express and positive statute, is prohibited by principle (*Jones* v. *Randall*, Cowp. 39; *Egerton* v. *Brownlow*, 18 Jur. 71; 4 H. L. Cas. 1; *Wyburd* v. *Stanton*, 4 Esp. 179). It is not material to inquire the effect of gifts upon the agent—whether they caused him to violate his duty to his principal. It is sufficient to know that the gifts were made and received. An agent is bound to pledge his integrity and fidelity to his principal, and any attempt on the part of a third person to make him unfaithful to his trust is a fraud upon the principal (*Morrison* v. *Ogdensburg R. R. Co.*, 52 Barb. 173; Story's Equity Jurisp. §§ 309–315; *Gillette* v. *Peppercorn*, 3 Beav. 78; *Panama Tel. &c. Co.* v. *India Rubber &c. Co.*, L. R. 10 Ch. 515; *Moses* v. *Thompson*, 10 Moak Eng. 129; *Reed*

v. *Warner*, 5 Paige 650; *Parkest* v. *Alexander*, 1 Johns. Ch. 393; Wharton on Agency § 244; *Rockford R. R. Co.* v. *Boody*, 56 N. Y. 461; *Butts* v. *Wood*, 38 Barb. 181; *Smith* v. *Albany*, 61 N. Y. 444).

The defense was fully sustained by the proof. The testimony on the subject is uncontradicted, and is clear and positive.

The claim, as the case stands, is one and indivisible, so that if tainted with illegality in the smallest degree, it must altogether fail (*White* v. *Jones*, 1 Bing. N. C. 656; *Featherstone* v. *Hutchinson*, Cro. Eliz. 199; *Jones* v. *Waite*, 5 Bing. N. C. 341; *Rose* v. *Truax*, 21 Barb. 376; *Thayer* v. *Rock*, 13 Wend. 53; *Scott* v. *Gilmore*, 3 Taunt. 226). The cause of action here is an account stated. That is one indivisible cause. of action. The only evidence given was, that an account was presented to Hatch, and he, either by silence and implication or by an express promise, agreed to pay it. It is one single cause of action, and if tainted with illegality the whole claim fails.

Plaintiffs cannot complain that the questions of fact were not submitted to the jury. They expressly waived their rights in that regard (*Vilas* v. *New York Central Ins. Co.*, 72 N. Y. 590–595; *Card* v. *Miller*, 1 Hun 504).

VAN HOESEN, J.—The answer is certainly obnoxious to criticism, but yet I think that the motions aimed at its paragraphs, at the opening of the trial, were properly denied.

There is only one question that it is my purpose to consider, and that question is, Did the evidence warrant the court, or would it have warranted a jury, in finding that a perfect defense had been proved? First, I call attention to the fact that the fourth paragraph of the answer, which contains the defense that the court below thought sufficient to warrant a judgment for the defendant, though it alleges that various carriages had been unnecessarily taken for repairs to the plaintiffs' shop, makes no objection to any other charges for repairs than those made for repairs to a landaulet; the words of the answer being, "this defendant claims and

insists that *he is not liable for any repairs done to said landaulet* by said plaintiff."

It might well be said that even if a defense to the charges for repairs to the landaulet were established, it did not entitle the defendant to a judgment in his favor unless 'it appeared that no other repairs than those to the landaulet were included in the claim in suit.

Waiving that point, I shall collate the evidence on the subject of the alleged bribery of the defendant's coachman, Mr. Brewster said, "It is customary to make the coachman a little present on the first of January; sometimes it is one dollar; sometimes two or three, and we have sometimes given more—five or six dollars, and I don't say but we may have given more than that; we always give it; even if they do not come, we send it; it is our rule, and we never deviate; if they do not come, we send it; it is a custom imported from the old country; if we did not pay the coachman of Mr. Hatch, it would be the first case; it induces a man to feel more pride in his carriage; he has to treat his friends; it is a credit to us, and also to his employer; it is not to induce him to bring work to our shop; if a man should ask for it, he would be kicked into the street."

The coachman said, "I never received any presents, except once a year, along holiday time; then we used to get a present. When any repairs were to be done, I took the carriages to Brewster. I took them there for repairs without saying anything about it to Hatch. I had orders to take them to Brewster whenever anything was out of order, and have it repaired. I received money from Brewster at different times, at no particular season of the year; I got it, two or three dollars at a time, from the bookkeeper. If I went round there, I got it, and if I did not go round, I would not get it. I did not get it every year, for I did not go. During the time I received the money, I was taking the carriages there for repairs. I received money from Brewster before I went into Hatch's employment, and after I left that employment."

It is contended by the defendant that this evidence estab-

lishes the fact that Breswter bribed the coachman unnecessarily to incur bills for repairs, and that the repairs were unnecessary, or would not have become necessary had not the coachman been corrupted by a bribe.

I have collated all the evidence in the case, and it is obvious that no witness has sworn that any of the repairs were made when a necessity for making them did not exist, or that the coachman purposely or wantonly broke the carriages, or put them in disrepair. This being the state of the case, the question arises, Had the trial judge, or would a jury have had, a right to infer from the fact that presents were, from time to time, made by the plaintiff to the coachman, that the repairs were unnecessary, or that the carriages were purposely injured by the coachman? The answer alleges that the repairs were unnecessary, or that they were made necessary by the coachman's wilful and corrupt act. If that allegation be unproved, the defense is not made out. There must be not only a bribe, but also some act done to the injury of the defendant under the influence of the bribe. Just as fraud and damage must concur to give a right of action for deceit, so must injury to the defendant have resulted from the bribe, in order to constitute a defense in such a case as this. There was an absolute lack of evidence of injury, and injury cannot be inferred from the mere fact that presents were given by the plaintiff, and accepted by the coachman. The utmost that can be said, is, that the plaintiff and the coachman were proved to have conspired together to do injury to the plaintiff; but it could not be inferred, from such evidence, that the conspiracy was carried into execution.

Whilst a contract is still executory, and when the principal has derived no benefit from it, the mere fact that it was made by an agent who had been seduced by a bribe from allegiance to his principal, is of itself a defense to an action brought to compel its performance, or to recover damages for its breach.

The case of *Smith* v. *Sorby* (L. R. 3 Q. B. Div. 552; 28 Moak. Eng. Rep. 455, note) is in point. There the agent, who

managed the defendant's colliery, entered into an agreement with the plaintiff that the plaintiff should supply fifty wagons for use in the colliery for five years, and that the hire of the wagons should be paid for either in money or in coal at the then market rate (which was 6s. a ton), at defendants' option.    Immediately after making this agreement, the plaintiff promised to pay the agent, as a commission, £1 for every wagon, and £10 as a bonus.    The plaintiff said that he did this in hopes of further business.    Before the time for the performance of this contract had arrived, the plaintiff and the defendant's agent, without the defendant's knowledge, altered its terms, so that the plaintiff was relieved from the obligation to furnish wagons, and the defendant was bound to furnish to the plaintiff 12,000 tons of coal at 6s. 6d. per ton.    The price of coal rose to £1 per ton, and the plaintiff demanded the delivery of the coal at 6s. 6d. per ton.    Upon the refusal of the defendant to deliver the coal, an action for breach of contract was brought.

Baron POLLOCK instructed the jury that the giving of the commission to the agent, though improper, was not necessarily fraudulent, and that in order to vitiate the contract on the ground of fraud, there must have been an intention on the part of the plaintiff to induce the agent to betray the defendant's interests, and the mind of the agent must have been corruptly affected by such inducement.    The jury found for the plaintiff, but on appeal taken a new trial was granted; COCKBURN, Ch. J., saying : " It is unnecessary to decide whether the secret payment of a gratuity to an agent by the party with whom he is negotiating on behalf of his employer, supposing it to have had no effect at all on the mind of the agent, will vitiate the contract made under such circumstances.     It is sufficient to say, in the present case, if a party with whom an agent is negotiating on the part of another, agrees to give, or does give, to the agent a secret gratuity, and that gratuity does influence the mind of the agent, directly or indirectly, in assenting to anything prejudicial to his employer in making the contract, the contract is vitiated.    Now, on looking at the facts of this case,

we see that the first agreement was beneficial to the defendant, for it gave her an option to pay for the wagons in money or in coals, which, as it turned out, would have been an advantage to her. Under the second agreement, the defendant was to have no option, but became bound to deliver the coals at a fixed price, which was very disadvantageous to her. If, in assenting to this fresh arrangement, the agent was influenced by the ·gratuity, then I think the principle I have laid down would apply, and the contract would be vitiated. We all agree that the giving of such gratuities is highly improper, and morally objectionable, because they are necessarily calculated to sap the fidelity of the agent towards his employer." The learned judge then discussed the evidence, and arriving at the conclusion that it showed that the agent had made the second agreement under the influence of the gratuity, said, "The jury should have been told that if the gratuity was given to the agent in order that he might have a favorable disposition towards the party giving it, and it had that effect, and he was thereby induced to enter into the second contract, that was quite enough to vitiate the second contract."

BLACKBURN, J. said: " There is no doubt that the giving of a secret gift or gratuity to an agent is very improper. I am not prepared to say that there is an absolute presumption, *præsumptio juris et de jure*, that the giving of such a gratuity amounts to fraud. I think it is a question for the jury, and if they think that the gratuity was without the knowledge of the principal, and with the intention of influencing or biasing the mind of the agent in favor of the person giving it, and that it did so bias the mind of the agent, and thereby acted as an inducement to him in entering into or carrying out, a contract, then they ought to find that there is what amounts to fraud." Like COCKBURN, Ch. J., Judge BLACKBURN thought the evidence in that case proved that the agent, in making the second contract, was biased in favor of the plaintiff, as the latter, when he gave the gratuity, intended that he should be, and that the verdict ought to have been for the defendant. A new

trial was granted; the ground being that the charge of the trial judge did not, upon the whole, clearly present the case to the jury.

There are several points of difference between that case and this. There was proof of injury to the defendant's interests. Here there was no such proof. There, the contract was still executory, and the defendant was not in possession of benefits that resulted from the performance by the plaintiff of the contract upon his part. Here, the defendant has received and enjoyed the fruits of the plaintiff's labor. Of course, there can be no rescission. The defendant must retain the benefit that he has derived from the repairs upon his carriages, and if the plaintiff is to be deprived of all compensation for the work that he has actually done, he may be injured, and the defendant advantaged, to a degree not indicated upon any scale of justice. The most that the defendant can say, is, that the plaintiff has been guilty of fraud, and the severest punishment that ought to be inflicted upon him is that which would be visited upon a fraudulent contractor. How does the law deal with fraud? It rescinds a contract procured by fraud, where rescission is possible; it denies its aid to compel the performance of a contract tainted with it; and where the situation of the parties has been so changed that rescission is impossible, it compensates the injured parties by an award of damages. Within the last of these clauses, the case of the defendant falls. If he shall prove that he has been injured by the plaintiff's bribery of the coachman, he may recover damages against the plaintiff. If he can show that the payment of the gratuity led the coachman purposely or recklessly to break the carriages, that a pretext for sending them to the repair-shop might be found, the plaintiff, if he intended to bias the coachman in his favor by giving the gratuity, would lose the items for repairs upon carriages so broken, and should answer to the defendant for the loss of the use of such carriages, and for their deterioration in value. If repairs that were unnecessary were made, the plaintiff ought not to recover for them,

but should be compelled to pay the defendant for the loss of the use of the vehicles whilst they were at the repair-shop. But it is for the defendant to prove that he has been damaged by fraud; and that proof he did not offer in the court below. Damage was presumed, not proved, and in that presumption there was error, for which the judgment should be reversed.

It is to be hoped that before the next trial the answer may be so amended that the case may be disposed of upon its merits, and not upon niceties of pleading.

CHARLES P. DALY, Ch. J., and LARREMORE, J., concurred.

Judgment reversed and new trial ordered, with costs to abide event.