31 N. E: 609, and cases cited; Matter of Davies, 168 N. Y. 89, 61 N.
E. 118, 56 L. R. A. 855.

If the corporation has violated either of these statutes its charter
ought to be annulled, and I think that the Legislature did not intend to
authorize the court to refuse leave to bring the action when the court
is of opinion that the action ought not to be brought, assuming that it
could be successfully maintained. I am of opinion that the Legislature
intended to vest the Attorney General with authority to determine, in
his discretion, whether or not an action for the annulment of a charter
of a corporation should be brought where a cause of action for annul-
ment exists; and it only requires leave of the court to the end that the
court might determine whether a cause of action exists for the annul-
ment of the charter so that the corporation might not be put to the
trouble and expense of a litigation, unless the facts presented by the
Attorney General show prima facie a cause of action, or present a
question of such gravity as to render it proper that it be decided upon
a trial, rather than upon the motion; and this construction is emphasiz-
ed by the practice of limiting the leave, by the order, to the prosecu-
tion of the cause of action arising on the facts presented on the ap-
plication for leave to sue. Matter of Attorney General, 81 Hun, 541, 30
N. Y. Supp. 1093; Matter of Attorney General, 50 Hun, 511, 3 N. Y.
Supp. 464; People v. Boston, H. T. & W. Ry. Co., 27 Hun, 528;
People ex rel. Gould v. Met. Telegraph Co., 2 Civ. Proc. Rep. (Mc-
Carthy's) 295. If section 7 of the stock corporation law or section 1
of the anti-trust law, so called, supra, be applicable to the defendant,
I do not agree with the majority of the court that the petition of the
Attorney General does not show that they have been violated, and, on
the contrary, I am of opinion that the facts stated in the petition pre-
sent a prima facie case of a violation of both statutes, assuming them to
be applicable to the defendant; that is to say, it appears presumptively
that the controlling interest in the other corporations was purchased
for the purpose of creating a monopoly and restraining competition in
the business in which the corporations are engaged.

I therefore vote for reversal of the order, and for granting leave to
bring the action.

---

### SIRKIN v. FOURTEENTH ST. STORE.

(Supreme Court, Appellate Division, First Department. February 14, 1908.)

1. CONTRACTS—ILLEGALITY—ENFORCEMENT.

A contract by which plaintiff sells goods to defendant through its pur-
chasing agent, the inducing cause for placing the order with plaintiff be-
ing plaintiff's agreement, unknown to defendant, to pay the agent 5 per
cent. of the purchase price of goods ordered by him, is either part of such
agreement, the making of which is under Pen. Code, § 384r, a misdemeanor,
and so void, or is tainted by such agreement, so that on grounds of public
policy an action for the purchase price cannot be maintained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 498–
507.]

2. SAME—RATIFICATION.

Public policy forbids the application of the rule of ratification to a
contract of sale of goods by plaintiff to defendant through its purchasing

agent, induced by plaintiff's illegal agreement to pay the agent a commission on all orders he should place with plaintiff, though defendant does not rescind the contract, or counterclaim for damages in an action against it for the purchase price.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 722.]

3. SAME—ILLEGALITY—EVIDENCE,

The illegality of a contract, as being against public policy, does not have to appear in plaintiff's case as made by him to prevent his recovery thereon, but it may be shown by defendant.

4. COSTS—ON APPEAL—REPLY BRIEF.

Appellant is not entitled to recover as part of its costs, on obtaining a reversal, the expense of printing its reply brief; it having therein reiterated and quoted at great length an argument from its first brief.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Costs, §§ 978–981.]

Scott, J., and Patterson, P. J., dissenting.

Appeal from Appellate Term.

Action by Samuel Sirkin against the Fourteenth Street Store. From a determination of the Appellate Term (55 Misc. Rep. 288, 105 N. Y. Supp. 179), affirming a judgment of the City Court for plaintiff (54 Misc. Rep. 135, 105 N. Y. Supp. 638), defendant, by leave of the Appellate Term, appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Benjamin G. Paskus (Arthur W. Weil, on the brief), for appellant. Moses Feltenstein, for respondent.

LAUGHLIN, J. The action is brought to recover $1,555.81, being the purchase price of certain hosiery and wrappers sold and delivered by the plaintiff to the defendant. The defendant is a corporation conducting a department store in the city of New York, and the plaintiff is a manufacturer of or dealer in goods of the character described. The defendant, for a separate answer and defense, alleged, in substance, that the plaintiff, without its knowledge or consent, and pursuant to an unlawful, fraudulent, and criminal design, and for the purpose of influencing the purchase of the goods by the defendant's purchasing agent, agreed to pay him a sum of money equal to 5 per cent. of the purchase price of the goods to be ordered by him; that the orders for these goods were obtained pursuant to such unlawful, fraudulent, and criminal design and agreement; that, after the goods were ordered and delivered, the plaintiff, pursuant to his agreement with the defendant's purchasing agent, paid the latter the sum of $75 without other consideration than placing the orders for the goods with the plaintiff; and that the ordering and delivery of the goods and the agreement and the arrangement to pay and the payment were part of an entire transaction which was against public policy, illegal, void, and contrary to the statutory law of the state of New York. Upon the trial the plaintiff proved that the orders for the goods were given by the defendant's purchasing agent, and the delivery of the goods to the defendant and nonpayment. The plaintiff then moved for judgment upon the evidence and on the pleadings, upon the ground that the affirmative defense was insufficient in law. Counsel for the defendant objected to the motion, and asked leave to prove the facts alleged in the

separate defense. The court thereupon directed a verdict in favor of the plaintiff for the purchase price of the goods, together with interest thereon. The learned judge who presided in the City Court wrote an elaborate and instructive opinion in support of his decision, upon the theory that, while the agreement on the part of the plaintiff to pay the agent of the defendant was void as against public policy, yet, inasmuch as the goods had been delivered, the defendant would not be permitted to retain the goods and decline to pay therefor. The learned Appellate Term supplemented this opinion with their views at length to the same effect.

I am of opinion that the judgment is wrong, and should be reversed. It must be assumed that the defendant might have proved, upon the separate defense set up in its answer, that the corrupt offer and agreement on the part of the plaintiff to pay the defendant's agent 5 per cent. on the orders received was the inducing cause for placing the orders with the plaintiff, and that the agreement on the part of the latter so to place the orders constituted one transaction. If so, the court should not be astute to discover a theory upon which they may be separated, and they should be deemed inseparable. In any view, it would seem that the defendant might have shown that the offer of an agreement to pay the bribe was made and accepted as a consideration for the giving by the defendant's purchasing agent, then or subsequently, the orders for the goods. That the bribe was conditioned upon plaintiff's giving the contract is demonstrated by his agreement to pay a percentage of the selling price of the goods, according to the orders received. It should be regarded, therefore, practically as if the agreement had expressly provided that the purchasing agent of the defendant should receive a specified percentage of the moneys actually received by the plaintiff on orders so placed with him; thus, in effect, forming but one contract with these parties, and a different consideration running to the agent from that running to his principal. It must be assumed, therefore, that each order for goods given by the agent was given pursuant to one general corrupt agreement, embracing all orders to be given, or pursuant to separate corrupt agreements with respect to each. The corrupt practice of secretly offering bribes to servants, agents, and employés to induce them to place contracts for their masters or employers had spread to such an alarming extent in this state that its viciousness and dishonestly and demoralizing tendencies attracted the attention of the Legislature at its session in 1905 (Laws 1905, p. 225, c. 136), and led it to declare it to be a misdemeanor to give or receive such a bribe by enacting section 384r of the Penal Code, which provides as follows:

"Corrupt Influencing of Agents, Employés or Servants. Whoever gives, offers or promises to an agent, employé or servant, any gift or gratuity whatever, without the knowledge and consent of the principal, employer or master of such agent, employé or servant, with intent to influence his action in relation to his principal's, employer's or master's business; or an agent, employé or servant who, without the knowledge and consent of his principal, employer or master, requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself, under an agreement or with an understanding that he shall act in any particular manner to his principal's, employer's or master's business, or an agent, employé or servant, who, being authorized to procure materials, supplies or other articles either by purchase

or contract for his principal, employer or master, or to employ service or labor for his principal, employer or master, receives directly or indirectly for himself or for another, a commission, discount or bonus from the person who makes such sale or contract, or furnishes such materials, supplies or other articles, or from a person who renders such service or labor; and any person who gives or offers such an agent, employé or servant such commission, discount or bonus shall be guilty of a misdemeanor and shall be punished by a fine of not less than five hundred dollars, or by such fine and by imprisonment for not more than one year."

There can be no doubt that the act of the plaintiff in bribing the purchasing agent of the defendant was a violation of this section of the Penal Code. The plaintiff, therefore, in obtaining the contract upon which he bases this action, committed a crime, and, as already observed, whether the purchasing agent of the defendant agreed to place the orders at the same time the plaintiff agreed to give him the bribe, or whether the orders were given subsequently, but based upon the plaintiff's unlawful contract to bribe the agent, is immaterial. The Legislature has not expressly declared either that the contract to pay the bribe or the contract induced by the bribe is void or unenforceable. A contract, however, made in violation of a penal statute, although not expressly prohibited or declared to be void, is prohibited, void, and unenforceable, whether executory or executed (Griffith v. Wells, 3 Denio, 226; Barton v. Port Jackson & N. T. P. R. Co., 17 Barb. 397). A contract to do an illegal act or to aid another in violating the law is likewise void and unenforceable, whether executory or executed. Goodrich v. Houghton, 134 N. Y. 115, 31 N. E. 516; Materne v. Horwitz, 101 N. Y. 469, 5 N. E. 331; Brinkman v. Eisler (City Ct. N. Y.) 7 N. Y. Supp. 193, affirmed (City Ct. N. Y.) 16 N. Y. Supp. 154; Hull v. Ruggles, 56 N. Y. 484. Upon the same principle one who is required by law to procure a license to conduct any trade, calling, or profession may not recover for services rendered or property sold, without first obtaining such license, regardless of whether or not it was known by the person for whom the services were rendered or to whom the property was sold that the license had not been obtained. Johnson v. Dahlgren, 166 N. Y. 354, 59 N. E. 987; Schnaier v. Hotel Co., 82 App. Div. 25, 81 N. Y. Supp. 633; Accetta v. Zupa, 54 App. Div. 33, 66 N. Y. Supp. 303; Griffith v. Wells, supra. It is therefore quite clear that the purchasing agent could not enforce the contract to recover the consideration agreed to be paid to him; and it may be here observed that this would have been so under the common law, if the statute had not been enacted, for the contract contravened public policy. Harrington v. Victoria Graving Dock Co., L. R. 3 Q. B. D. 549. The question appears to be presented now for the first time as to whether this is the limitation of the disability for violating the penal statute, or whether the court may refuse its aid to the party obtaining the contract for the purchase or sale of property, or for work, in violation of the statute, upon the same ground that it leaves a party to a contract which is void as against public policy, or offends against good morals, where it finds him. It is manifest that the Legislature in enacting this penal statute intended to emphasize and extend the public policy of the common law, which rendered such contracts by agents for their own benefit void. It being the province of the Legislature to declare the public policy of the

state, it is the duty of the court to be guided thereby in administering the law. The acts of the plaintiff, not only offended against good morals and public policy at common law, but constituted a crime under the statutory law of this state; and he is here seeking the aid of the court to enforce a contract which he procured by violating our penal statute. Nothing could be more corrupting, nor have a greater tendency to lead to disloyalty and dishonesty on the part of servants, agents, and employés, and to a betrayal of the confidence and trust reposed in them, than these practices which the Legislature has endeavored to stamp out; and I think nothing will be more effective in stopping the growth and spread of this corrupting and now criminal custom than a decision that the courts will refuse their aid to a guilty vendor or vendee, or to any one who has obtained a contract by secretly bribing the servant, agent, or employé of another to purchase or sell property, or to place the contract with him. If the court should lend its aid to the enforcement of this contract, induced by a 5 per cent. bribe of the purchase price of the goods, then to-morrow it may be called upon to enforce a contract induced by a bribe of 25 per cent. or even 50 per cent. of the purchase price, and it would thereby be indirectly compelling a master or employer to reimburse a party for moneys expended in bribing his servant, agent, or employé, in violation of the law. Of course, a contract by which the price is increased to enable the vendor to pay the agent could not be enforced as to such increase, but a decision stopping there would be of little aid in remedying the evil. If the servant could not make a contract obligating his master to pay a certain percentage of the purchase or selling price of goods to himself, why should the criminal vendor or vendee be permitted to enforce a contract, secretly made, practically in part for the benefit of the servant, agent, or employé whom he has unlawfully corrupted? How can or why should the contract be divided, and the guilty vendor or vendee be permitted to recover the part of the selling or purchase price which was to be received for himself over and above the amount he was to pay the agent? It would require a consideration of the unlawful agreement to determine the amount each is to receive; and that is fatal, for it is one test to determine whether courts will enforce a contract. Leonard v. Poole, 114 N. Y. 371, 21 N. E. 707, 4 L. R. A. 728, 11 Am. St. Rep. 667.

The learned counsel for the plaintiff contends that it does not appear that the contract price is more than the fair market value of the property. It would seem on the facts that it is 5 per cent. more than the plaintiff desired for his property; and, if these practices are allowed, the tendency will be not only to keep prices up, but to raise them, and the nominal price, if the custom should become general, would not represent the selling price of property. Public policy requires that an agent, servant, or employé shall perform the duties of his employment involving discretion and trust, with a single purpose of serving his master or employer; and the master or employer, for the salary or compensation which he has agreed to pay, has a right to expect honest, faithful, loyal service, rendered with a sole regard to his interests. The tendency of this practice is to make the servant disloyal, and to have his action not only influenced, but controlled, by his personal interests, rather than by the duties of his employment. The temptation

will be either to agree for his master or employer to pay more than the fair market price of property purchased, or fair market value of work to be performed, or to accept property or work of an inferior quality or grade, in order that he may receive for himself a larger percentage. The servant would be accountable to his master or employer for any moneys thus received, but that affords no adequate remedy, for the reason that such contracts are made secretly, and it would be difficult to discover or prove the facts. The vice lies in making the agreement without the knowledge of the master. Of course, it is perfectly competent for a master to employ a servant as a purchasing or selling agent, and to give him a commission upon the purchase price or allow a commission to be paid by the vendee upon the selling price, and it may well be, as was recently held in Ballin v. Fourteenth Street Store, 54 Misc. Rep. 359, 105 N. Y. Supp. 1028, affirmed (Sup.) 108 N. Y. Supp. 26, that, where the bribe is received with the knowledge of the master, the statute does not apply, and the contract of sale will be enforced. It is perfectly plain that, if the contract had not been performed by the plaintiff, the defendant, upon discovering the fact that its agent had been bribed to place the contract, would have had the right to rescind. Smith v. Seattle L. S. & E. Ry. Co., 72 Hun, 202, 25 N. Y. Supp. 368. It is contended that its only remedies upon discovering the facts were to rescind the contract, or, if that were impracticable, to counterclaim for any damages it has sustained by reason of the plaintiff's fraud in inducing the contract, and that by a failure to rescind or thus counterclaim it is deemed to have ratified and affirmed the contract. I am of opinion that this is not a case in which the rule of ratification, applicable to ordinary contracts induced by fraud, should be applied. The public policy of our state forbids the ratification, as well as the making, of such a contract. Usually private contracts concern only the parties thereto, and it is optional with a person who has discovered that he has been defrauded whether to ratify the contract or to rescind it. There is ordinarily, at least, no general public policy involved in such cases.

The learned counsel for the plaintiff contends that Brewster v. Hatch, 13 Daly, 65, Id., 18 Abb. N. C. 205, is a decisive authority in favor of his client. When that decision was made, bribing an agent to place a contract was not a crime. On the facts it is also distinguishable. There, pursuant to a custom, presents were given by a carriage manufacturer and repairer to coachmen on New Year's Day; but there was no evidence of an agreement, express or implied, that they were to bring their employers' carriages to the shop for repairs. The opinion shows that the coachman of the defendant was directed by his employer to have repairs made at the shop of the plaintiff. The court ruled that, if the employer sustained any damages by reason of the coachman being induced by the presents to have repairs made when unnecessary, his remedy was to counterclaim for his damages. Moreover, the question of public policy is not discussed in the opinion. The case at bar, I think, falls fairly within the doctrine announced by the Circuit Court of Appeals in Standard Lumber Co. v. Butler Ice Co., 146 Fed. 359, 76 C. C. A. 639, 7 L. R. A. (N. S.) 467, where the

court refused its aid to the plaintiff to collect any part of the purchase price of constructing an ice plant; it appearing that by an agreement between the president of the defendant and an officer of the plaintiff a bid which the plaintiff had submitted was increased more than 50 per cent. on the understanding that the excess should be divided between them and the plaintiff, which was a violation of a statute of the state.

There is no force in the contention that this contract does not contravene public policy, because it may be proved without proving the illegal contract between the plaintiff and the purchasing agent of the defendant, pursuant to which it was made. The rule is stated in Chitty on Contracts, 654, that the test as to "whether a demand connected with a transaction is capable of being enforced at law is whether the plaintiff requires any aid from the illegal transaction to establish his case." This rule is quoted approvingly in Gray v. Hook, 4 N. Y. 449, and Woodworth v. Bennett, 43 N. Y. 273, 3 Am. Rep. 706. It is technically accurate if confined to the plaintiff's case; but the rule has since been extended, and it is now well settled that, if the illegality appears by the evidence developed by the plaintiff or by the evidence presented by the defendant, there can be no recovery, and that, even though the contract may be in writing and apparently valid, the illegality may be shown by surrounding facts and circumstances, as is conclusively established by the case of Ernst v. Crosby, 140 N. Y. 364, 35 N. E. 603, where a recovery for rent on a lease in writing apparently valid, for it showed that the house was to be used for the purposes of a residence only, was defeated upon proof that the house was to the knowledge of the landlord to be used for immoral purposes. In this particular case the defendant is an innocent party. It is argued, however, that he should not be permitted to retain the goods without paying for them. The rule of public policy under which courts refuse their aid to enforce contracts was not established to protect the parties, and the court suspends action when the foundation is properly laid by the evidence presented by either party. Drake v. Lauer, 93 App. Div. 86, 86 N. Y. Supp. 986, affirmed 182 N. Y. 533, 75 N. E. 1129; Dunham v. Hastings Paving Co., 56 App. Div. 244, 67 N. Y. Supp. 632, 57 App. Div. 426, 68 N. Y. Supp. 221. See, also, Id., 118 App. Div. 127, 103 N. Y. Supp. 480, affirmed 189 N. Y. 643, 81 N. E. 1163; State of Kansas ex rel. Bradford v. Cross, 38 Kan. 696, 17 Pac. 190. The cases of Cody v. Dempsey, 86 App. Div. 335, 83 N. Y. Supp. 899, and Haynes v. Abramson (Sup.) 97 N. Y. Supp. 371, are distinguishable, upon the ground that, while it was then supposed that the statute making it a misdemeanor for a broker to offer real estate for sale without being duly authorized in writing was valid, yet the contract was not immoral, and the fact as to whether or not he was authorized in writing had no bearing upon the contract which he negotiated between the parties, as it was not based on his contract, which merely approached or led up to the making of the contract of sale. Sinnott v. German American Bank, 164 N. Y. 391, 58 N. E. 286, is also distinguishable upon the ground that the statute prohibiting conducting a copartnership business with the designation "& Co." not representing an actual partner,

was designed to protect those giving credit to the firm, and not those receiving credit from the firm. See Gay v. Seibold, 97 N. Y. 472, 49 Am. Rep. 533.

If the orders were not given at the time the bribe was offered, so that the agreement to bribe and the agreement to place the orders constituted one transaction which would vitiate the whole, they were at least based upon and placed pursuant to the agreement of the plaintiff to bribe the purchasing agent of the defendant, which brings the case fairly within the rule that every agreement, although founded in part on a new legal consideration, founded upon, auxiliary to, or made to carry into effect any of the unexecuted provisions of a previous illegal contract, is void even though completely executed by one party, and will not be enforced at the instance of the party who has executed it. Gray v. Hook, supra; Barton v. Pt. Jackson, etc., supra; De Witt v. Brisbane, 16 N. Y. 508; Bell v. Quin, 2 Sandf. 146; Judd v. Harrington (Com. Pl.) 19 N. Y. Supp. 406; Armstrong v. Toler, 24 U. S. 258, 6 L. Ed. 468; Leonard v. Poole, supra; Rhodes v. Stone, 63 Hun, 624, 17 N. Y. Supp. 561; Vincent v. Moriarity, 31 App. Div. 484, 52 N. Y. Supp. 519; Trovinger v. M'Burney, 5 Cow. 253. In Armstrong v. Toler, supra, Chief Justice Marshall, writing for the court, sustained an instruction to the jury that:

"Where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it. And if the contract be, in fact, one connected with the illegal transaction, and growing immediately out of it, though it be, in fact, a new contract, it is equally tainted by it."

I am therefore of opinion that the defendant should have been permitted to prove the facts pleaded as a separate defense, and that, if they be established, the plaintiff will then be shown to have committed a crime in obtaining the very contracts which he asks the aid of the court to enforce, and should be denied assistance.

The learned counsel for the appellant in his brief in reply reiterates and quotes at great length an argument from his first brief. This practice is condemned as improper, useless, and unnecessarily increasing the labor of the court.

It follows that the determination and judgment should be reversed and a new trial granted, with costs to the appellant, excepting the disbursements for printing the brief in reply, to abide the event.

McLAUGHLIN and CLARKE, JJ., concur.

SCOTT, J. (dissenting). The defendant under a contract of purchase has received plaintiff's goods to the value of $1,555.81, and either now has them, or has sold them and retained the proceeds. It now objects to paying for them, but neither tenders back the goods nor offers to return the proceeds, nor asserts that he suffered any loss or damage by reason of the purchase. Its defense is in effect a plea in bar. It says that the purchase was negotiated by one McGuiness, its purchasing agent; and, for the purpose of inducing the purchase, plaintiff agreed to pay and did pay McGuiness a commission upon the purchase price, in violation of section 387r of the Penal Code (chapter

136, p. 225, Laws 1905); that this agreement to pay and payment to McGuiness, being a criminal act, so taints with illegality the purchase thereby induced, that the court should refuse to enforce the contract of purchase, and permit defendant to retain plaintiff's goods without paying for them. It is proposed to uphold the defendant in this position because it is believed that such a decision will be most effective in stopping the growth and spread of the corrupting and now criminal custom of paying secret commissions to purchasing agents. It is not contended that the Legislature decreed that contracts, otherwise valid, and wholly executed, should be unenforceable if induced by giving a secret commission to the purchaser's agent; and, while it might lie within the power of the Legislature to add this consequence to the penalties already prescribed for a violation of the statute, that is a matter for legislative, and not judicial, action. The unlawful agreement between plaintiff and McGuiness was no part of the contract between plaintiff and defendant, and, in order to prove the latter, it was not necessary to prove the existence of the former. It needs neither argument nor the citation of authorities to establish the proposition that McGuiness could not have recovered from plaintiff the agreed percentage because the contract to pay it was in itself a criminal act. The contract between plaintiff and defendant was not criminal, and was fully executed. Undoubtedly the secret agreement to pay a commission to plaintiff was a fraud on defendant, and rendered the contract voidable at its option. Smith v. Seattle L. S. & E. Ry., 72 Hun, 202, 25 N. Y. Supp. 368. It might, if it had discovered the fraud in time, have refused to receive the goods, or, having received them, might have tendered them back, or might even now counterclaim for the damages it suffered from the fraud, if, in fact and law, it could show that it had suffered damage. The statute which has made that a crime, which heretofore was merely immoral, has affixed to that crime an appropriate penalty. It is no part of our duty to assume legislative power and prescribe an additional punishment, nor are we to assume, in the absence of allegations to that effect, that the defendant did, in fact, suffer damage as a result of plaintiff's unlawful agreement with McGuiness.

The determination of the Appellate Term should be affirmed, with costs.

PATTERSON, P. J., concurs.