Claude F. Babcock, as Administrator, etc., of James T. Foody, Deceased, Respondent, v. Warner Bros. Theatres, Inc., and Another, Appellants, Impleaded with Nikitas D. Dipson and Another, Defendants.

Fourth Department, March 21, 1934.

*Acton M. Hill* [*Morris Ruffman* and *Stuart H. Aarons* of counsel], for the appellants.

*George A. King* [*Edwin J. Carpenter* and *Clarenc H. Brisco* of counsel], for the respondent.

TAYLOR, J. Mrs. H. S. Coughlin owned the Shattuck Opera House building in the city of Hornell, N. Y. On May 6, 1927, James T. Foody, plaintiff's decedent and an attorney of Hornell, entered into a contract as first party with defendants Dipson and Osborne of Batavia, N. Y., as second parties which contained the following provisions:

" WHEREAS, Mrs. H. S. Coughlin is about to execute a lease of the Shattuck Opera House premises to James T. Foody or in blank with the right to said James T. Foody to insert the name or names of second party or parties as lessees, which lease is to be for a period of twenty five years commencing June 10th, 1930 and expiring June 10th, 1955, at the rental specified therein, and

" WHEREAS, second parties Nikitas D. Dipson and John R. Osborne desire to take an assignment of said lease or prefer to have their names inserted therein as lessees, if said lease is executed in blank, with the same legal effect as though an assignment had actually been made by first party, * * *

" First party [Foody] agrees to assign said lease of the Opera House above mentioned or will insert the names of second parties in said lease made by Mrs. H. S. Coughlin * * * and second

parties agree to pay the rental therein specified and in addition thereto agree to pay James T. Foody as follows:

" For the first five years * * * an amount representing the difference between the rental set forth in said lease and thirty five thousand dollars ($35000.00) * * *.

" For the next ten years * * * an amount representing the difference between the annual rental set forth in said lease and seventy five hundred dollars ($7500) * * *.

" For the last ten years * * * an amount representing the difference between the annual rental set forth in said lease and eight thousand dollars (8000) * * *.

" The amount represented by the difference between $5000 and the amount of first payment set forth in said lease shall belong to first party hereto. * * *

" In the event there shall come a time when the Shattuck Opera House Block shall be for sale, it is agreed that each of the parties hereto will co-operate with each other, in an attempt to purchase the same, providing the parties hereto desire to purchase it. · If the property is purchased by all the parties hereto, then this agreement may be changed as the parties mutually agree."

On May 9, 1927, three days afterwards, Mrs. Coughlin entered into a contract leasing said premises to Dipson and Osborne for twenty-five years at a substantial rental specified in detail. Dipson and Osborne carried on under this lease, making the agreed payments to Foody under the May sixth contract until June 6, 1930, when — pursuant to a consent executed by Mrs. Coughlin May 24, 1930 — Dipson and Osborne entered into an agreement with appellants Vendome Theatre Corporation and Warner Bros. Theatres, Inc., whereby the lease was assigned to defendant Warner Bros. Theatres, Inc. And in this assignment the agreement between Foody and Dipson and Osborne of May 6, 1927, was recognized and all the obligations of Dipson and Osborne thereunder assumed by the Warner Bros. Theatres, Inc. Dipson and Osborne made payments to Foody under the agreement of May 6, 1927, so long as they remained lessees in possession of the premises, but their assignee has refused to make any payments to Foody or the administrator of his estate. This action is brought against the Vendome Corporation and the Warner Bros. Corporation and Dipson and Osborne to recover $3,200 and interest claimed to be due to the estate of Foody. All the defendants interposed counterclaims. At the opening of the trial the counterclaim of Dipson and Osborne was withdrawn. At the close of the evidence a motion to dismiss the complaint as to Dipson and Osborne was granted and a motion to dismiss the counterclaims of the other defendants was denied.

The jury found against the defendants remaining in the case in the amount of $3,533.32, and they have appealed.

The defense raised by the appellants was that when James T. Foody executed the May 6, 1927, agreement with Dipson and Osborne he was and long had been Mrs. Coughlin's lawyer; that that agreement was illegal and unconscionable and that in executing and carrying it out James T. Foody, in co-operation with Dipson and Osborne, had violated section 439 of the Penal Law and should not recover. It was also claimed that the appellants, defendants, had no knowledge of the corrupt element in the contract of May 6, 1927, until long after the agreement of May 9, 1927, was executed. The learned trial court submitted to the jury the issues: (1) Whether or not on May 6, 1927, James T. Foody was attorney for Mrs. Coughlin, and (2) whether or not the agreement of May 6, 1927, was ratified by Mrs. Coughlin after its execution. These two points were sharply litigated. In the course of the charge this was said to the jury: " If it [the contract of May 6, 1927] was not fair, if it was a fraud perpetrated upon Mrs. Coughlin by Mr. Foody under the guise of attorney and client, and if Mrs. Coughlin never ratified it, never made it her own, never was satisfied with it, then, of course, I do not have to tell you that it cannot stand here, because it is based upon fraud and upon undue influence."

After the main charge this occurred: " Mr. Hill [defendants' counsel]: Now I ask your Honor to charge that if that section of the Penal Law [section 439] was violated by Mr. Dipson and Mr. Osborne with Mr. Foody that that renders such a contract void, and Mr. Foody could not recover upon it. The Court: I so charge unless it was ratified and confirmed and approved by Mrs. Coughlin. If Mrs. Coughlin, knowing the contract between Dipson and Osborne and Mr. Foody, was satisfied with it, if she knew about it and she was satisfied with it, that is the end of it. Mr. Hill: I except to your Honor's modification of the request."

This statement of the court is susceptible of the construction that not only knowledge and consent by Mrs. Coughlin before or at the time the contract in question was executed, but subsequent ratification by her was adequate to validate the contract as to Mr. Foody. The jury having rendered a general verdict, it is inferable that under the charge last above quoted they found that Foody violated section 439 of the Penal Law but that Mrs. Coughlin ratified his acts in so doing, thereby giving the contract of May sixth full validity. Appellants are entitled to this inference. (*Tryon* v. *Willbank*, 234 App. Div. 335.) Section 439 of the Penal Law reads, in part, as follows:

" § 439. Corrupt influencing of agents, employees or servants.

1. A person who gives, offers or promises to an agent, employee or servant of another, any gift or gratuity whatever, without the knowledge and consent of the principal, employer or master of such agent, employee or servant, with intent to influence such agent's, employee's or servant's action in relation to his principal's, employer's or master's business; or an agent, employee or servant who without the knowledge and consent of his principal, employer or master, requests or accepts a gift or gratuity or a promise to make a gift or to do an act beneficial to himself or to another, under an agreement or with an understanding that he shall act in any particular manner in relation to his principal's, employer's or master's business, or receives a reward for having so acted  *  *  * is guilty of a misdemeanor."

There is no testimony that the agreement of May 6, 1927, was made with the prior knowledge or consent of Mrs. Coughlin. The testimony of George A. King, attorney for this plaintiff, respondent, and Edward H. Minor, claimed by respondent to show ratification by Mrs. Coughlin of this agreement, is of slight probative value in that aspect, and the testimony of Louise Karides, if given full credence, shows conclusively that Mrs. Coughlin did not ratify. There is an entire absence of proof that any claimed ratification by Mrs. Coughlin was with full knowledge of the facts, of possible defects in the act to be confirmed and of Mrs. Coughlin's legal or equitable rights. And in the absence of such knowledge there is no ratification. (*Adair* v. *Brimmer*, 74 N. Y. 539, 554.)

But the contract of May 6, 1927, if its execution and performance accomplished a crime, as assumed in the quoted request to charge, was not capable of such ratification as to enable this plaintiff to recover under it. Public policy also forbids. "A contract procured by the commission of a crime is unenforceable even if executed  *  *  *. The illegality does not consist in the approach to the contract as stated in *Cody* v. *Dempsey* (86 App. Div. 335).  *  *  * No person can maintain an action to which he must trace his title through his own breach of the law. (*Hall* v. *Corcoran*, 107 Mass. 251, 260.) " (*Morgan Munitions Co.* v. *Studebaker Corp.*, 226 N. Y. 94, 99.) The applicable rule is found in the often cited and approved prevailing opinion in *Sirkin* v. *Fourteenth Street Store* (124 App. Div. 384). That opinion dealt with the case of a plaintiff seeking to recover payment for goods sold and delivered when he had bribed defendant's selling agent by paying him secret commissions to obtain the business. There, as here, section 384-r of the Penal Code (now section 439 of the Penal Law) was invoked against the plaintiff. The court made clear the salutary doctrine that as to any employee or agent occupying a position involving

discretion and trust (surely including a lawyer) a master or principal (or client) has the right to expect honest, faithful and loyal service and that his representative shall not be corruptly tampered with to render him disloyal. The opinion also declared that sound public policy forbids not only the making but the ratification of such a contract. Noteworthy too, as bearing upon the situation of Foody in the instant case, is the statement that it is " quite clear that the purchasing agent could not enforce the contract to recover the consideration agreed to be paid to him; and it may be here observed that this would have been so under the common law, if the statute had not been enacted, for the contract contravened public policy. (*Harrington* v. *Victoria Graving Dock Co.*, L. R. 3 Q. B. Div. 549.) " (See, also, *Sayres* v. *Decker Automobile Co.*, 239 N. Y. 73; *Merchants' Line* v. *B. & O. R. R. Co.*, 222 id. 344, at p. 346; *Standard Lumber Co.* v. *Butler Ice Co.*, 146 Fed. 359; *Reiner* v. *North American Newspaper Alliance*, 259 N. Y. 250, 261; *Palmer* v. *Doull Miller Co., Inc.*, 233 Fed. 309.)

*Hearn* v. *Schuchman* (80 Misc. 311; affd., 157 App. Div. 926; affd., 212 N. Y. 352) was an unsuccessful action to recover back moneys paid by plaintiffs for services rendered and material furnished to them by defendant. The basis of the action was a claim that, pursuant to a secret agreement, defendant had paid plaintiffs' employees ten per cent of the amount of his collections from plaintiffs. The distinction between this and the *Sirkin* case was made clear in the opinion, it being declared to rest upon the facts that there the defrauded employers — without restitution or tender back — were suing for rescission and to recover moneys paid under an *executed* contract voidable only as to them. The case of *Ballin* v. *Fourteenth Street Store* (54 Misc. 359; affd., 123 App. Div. 582; affd., 195 N. Y. 580) is so clearly distinguishable as to require no discussion. In the Trial Term opinion the court says: " If this action were by said purchasing agent against the plaintiff to recover the sum which he promised to pay to him, it would not be enforced."

The factual difference between the present case and the *Sirkin* case and other cases cited does not deprive those cited of all authority. Under the facts assumed in the request to charge plaintiff is endeavoring to compel innocent assignees of a contract to deliver to plaintiff the fruits of a contract involving criminality on the part of plaintiff's testate. The cases hold that such a bargainer cannot thus profit from such a bargain. He could not recover under the common law if there were no section 439 of the Penal Law. (*Harrington* v. *Victoria Graving Dock Co.*, L. R. 3 Q. B. Div. 549.)

The denial of the quoted request to charge and the charge as

made sent the jury out with an incorrect appreciation of the applicable law in a material respect, and because of this error the judgment should be reversed upon the law and a new trial granted, with costs to appellants to abide the event.

All concur, except EDGCOMB and LEWIS, JJ., who dissent and vote for affirmance.

Judgment reversed on the law and new trial granted, with costs to appellants to abide the event.