OPINION OF THE COURT
James C. Harberson, Jr., J.
Facts
The plaintiff and defendant agreed to move in together at the defendant’s residence. The plaintiff before and after this social *394 arrangement elected to pay various bills of the defendant’s as he felt the “homestead” was a place he intended to remain in for the rest of his life. He said that he expended over $10,000 for which he seeks $5,000 in this action. The plaintiff agreed that when he spent these sums he did not expect any repayment.
The defendant in her counterclaim seeks $2,697.03 she claims the plaintiff owes to her after the live-in arrangement soured and he had been removed from her property on February 13, 2004. She explained that both parties had agreed to pool their incomes in a joint checking account and the plaintiff was to pay all bills of both parties from it. The defendant discovered that not all of her obligations were paid and she seeks $697.03 to cover “expenses” she claims were the plaintiffs responsibility arising from the period their relationship was in effect. She also seeks $2,000 for the cost of a bankruptcy filing with the attendant lawyer’s fees she was forced to pay because of the financial situation that developed while the parties were together as a result of these debts that were not paid.
Law
Professor Alan Scheinkman, in his Practice Commentary for section 236 of the Domestic Relations Law (McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:4, at 258), states that “marriage is an economic partnership . . . [which] cannot exist until marriage has occurred”; and “[i]f non-marital cohabitants wish to form an economic partnership, they may do so; but the partnership can be created only by agreement, not by operation of law. See Morone v Morone, 50 N.Y.2d 481, 429 N.Y.S.2d 592, 413 N.E.2d 1154 (1980).” (Id.) Thus, “[a]n oral agreement between non-married cohabitants as to a division of property is enforceable.” (Id.)
Later in his Commentary Professor Scheinkman observes visa-vis equitable distribution of marital property that “[e]quitable means what is fair, just and right in consideration of the facts and circumstances of each individual case” (C236B:24, at 409). He explains that “[i]n mandating that the court distribute marital property to the parties ‘equitably’, the Legislature has empowered the courts to divide marital property justly and fairly. The court ‘shall do equity’.” (Id.)
In Morone, the Court stated (at 486):
“New York courts have long accepted the concept that an express agreement between unmarried *395 persons living together is as enforceable as though they were not living together (Rhodes v Stone, 63 Hun 624, opn in 17 NYS 561; Vincent v Moriarty, 31 App Div 484), provided only that illicit sexual relations were not ‘part of the consideration of the contract’ (Rhodes v Stone, supra, at 17 NYS, p 562, quoted in Matter of Gorden, 8 NY2d 71, 75, supra). The theory of these cases is that while cohabitation without marriage does not give rise to the property and financial rights which normally attend the marital relation, neither does cohabitation disable the parties from making an agreement within the normal rules of contract law (Matter of Gorden, supra, at p 75; see Ann., 94 ALR3d 552, 559).”
The Court went on to state (at 487-488):
“Changing social custom has increased greatly the number of persons living together without solemnized ceremony and consequently without benefit of the rules of law that govern property and financial matters between married couples. The difficulties attendant upon establishing property and financial rights between unmarried couples under available theories of law other than contract (see Douthwaite, loe. cit.) warrant application of Gorden’s recognition of express contract even though the services rendered be limited to those generally characterized as ‘housewifely’ (Matter of Adams, 1 AD2d 259, affd 2 NY2d 796; cf. Dombrowski v Somers, 41 NY2d 858). There is, moreover, no statutory requirement that such a contract as plaintiff here alleges be in writing (cf. General Obligations Law, § 5-701, subd a, pars 1, 3).”
In DeFina v Scott (195 Misc 2d 75 [2003]), the court dealt with a dispute that arose from the termination of an engagement and the subsequent disputes over what reimbursement would be due for funds expended for the wedding “and the establishment of their eventual economic union” (id. at 76). Justice Lebedeff opined, “When both married and unmarried couples may call upon courts for enforcement of contracts, the agreements of formerly betrothed couples surely should be accorded the same honor” (id. at 80).
The DeFina court also cited Minieri v Knittel (188 Misc 2d 298 [2001]), where a same-sex couple’s domestic partnership ended and a dispute arose over the rights of the partners to assets acquired during their union. The Minieri court noted that:
*396 “This dispute typifies the legal difficulties in relation to property which lesbian and gay couples face. Because New York State does not afford them a legal right to marry, they must use contractual, statutory, common law, and equitable vehicles to protect their interests in property. Here, the failure of plaintiff and defendant to have executed any documents specifying any changes that would occur in their respective rights to the properties at issue in the event of a dissolution of the relationship of plaintiff and defendant (admittedly anti-romantic, akin to a prenuptial agreement) leaves them in the position of needing to have a court determine their rights at law and in equity.” (Id. at 300.)
The Minieri court then observed that “[a] court of equity may impose a constructive trust based on a confidential relationship, which can grow out of a marital or other family relationship, such as the one here” (id.).
This was observed by the Morone court when it noted that “[cjhanging social custom has increased greatly the number of persons living together without solemnized ceremony and consequently without benefit of the rules of law that govern property and financial matters between married couples” (Morone at 487).
In DeFina, the issue was not about a couple who had married, but who were engaged to be when the relationship failed. The task for the court was to address the financial rights between unmarried couples, which was the status of the DeFina-Scott cohabitation at the time of the breakup. Justice Lebedeff, after noting commentary “that women, who traditionally bear wedding expenses, are necessarily the economic losers in broken engagements” (DeFina at 79), concluded, after citing the case of Bloomfield v Bloomfield (97 NY2d 188 [2001]) for the proposition that “the law has advanced to the extent that prenuptial and antenuptial agreements are freely recognized” (DeFina at 80) as well as Minieri for the point that “[e]ven domestic partners may call upon a court to resolve and regulate property rights acquired during their relationship” (id.), that “where a contract exists,” that is, “[wjhen both married and unmarried couples may call upon the courts for enforcement of contract, the agreements of formerly betrothed couples surely should be accorded the same honor” (id.).
In Minieri the court expresses the same sentiment as regards same-sex cohabitation in resolving disputes arising upon the *397 dissolution of a union — “they must use contractual, statutory, common law, and equitable vehicles to protect their interests in property” — especially when the couple has failed to provide for (in Minieri) “their respective rights to the properties at issue in the event of a dissolution of the relationship . . . leav[ing] them in the position of needing to have a court determine their rights at law and in equity” (Minieri at 300).
It is clear, then, that an “express agreement between unmarried persons living together is as enforceable as though they were not living together” (Morone, supra at 486); and, as the Morone court ruled, “There is, moreover, no statutory requirement that such a contract. . . be in writing” (id. at 487).
As a result of this conclusion by the Morone court, any two people who enter into a joint social venture with or without an intent to obtain a license to marry as provided under the laws of New York, now or in the future, and/or as recognized in New York by comity or full faith and credit due acts of other counties or states, are able to seek at least as to “property and financial rights,” the “benefit of the rules of law that govern property and financial matters” “within the normal rules of contract law” (id. at 486-487).
Thus, from the commencement of a relationship until it terminates, contract relief is available throughout such a time period whether or not a licensed marriage or one recognized by the State of New York has occurred (in which event Domestic Relations Law § 236 in whole or in part would apply).
It is clear, then, that whether the parties enter into an engagement (DeFina), a domestic relationship (Minieri) or are married they have formed an “economic partnership” (Scheinkman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C236B:4, at 258) and they can seek from the appropriate court using its equitable powers as well as other legal remedies, i.e., “contractual, statutory, common law” (Minieri, supra at 300) to resolve disputes concerning all aspects of the “economic partnership” except a city court.
Watertown City Court’s Civil Part “is a court of limited jurisdiction. (Siegel, NY Prac, § 581.) It possesses strictly limited equitable powers . . . Those equitable powers do not encompass the sort of equitable relief’ (Scott v Dale Carpet Cleaning, 120 Misc 2d 118, 119 [1983] [citations omitted]) naturally attendant in fairly settling the type of dispute at issue in this case — that is, an equitable distribution of the “estate,” if you will, created *398 by the “death” of a social relationship. So, because in the end, as stated by Justice Braun in Minieri, in settling disputes upon the dissolutions of unmarried couples, “they must use contractual, statutory, common law, and equitable vehicles to protect their interests in property” (Minieri at 300), and city courts not having equitable powers that encompass the sort of equitable relief needed to craft a fair and equitable solution “to determine their rights at law and in equity” (id.), this court does not have jurisdiction over such disputes.
The petition is dismissed without prejudice so the parties can file an action in a court that has such equitable powers.